DISABILITY RIGHTS LEGAL CENTER
  Paula D. Pearlman (Cal. State Bar No. 109038)
  paula.pearlman@lls.edu
  Shawna L. Parks (Cal. State Bar No. 208301)
  shawna.parks@lls.edu
  Carly J. Munson (Cal. State Bar No. 254598)
  carly.munson@lls.edu
  Andrea Oxman (Cal. State Bar No. 252646)
919 Albany Street
Los Angeles, CA 90015
Telephone: (213) 736-8366
Facsimile: (213) 487-2106

MILBANK TWEED HADLEY & MCCLOY, LLP
  Linda Dakin-Grimm (Cal. State Bar No. 119630)
  ldakin@milbank.com
  Daniel M. Perry (Cal. State Bar No. 264146)
  dperry@milbank.com
  Delilah Vinzon (Cal. State Bar No. 222681)
  dvinzon@milbank.com
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063

*Attorneys for Plaintiff, Michael Garcia*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

MICHAEL GARCIA on behalf of himself and others similarly situated,

                              Plaintiff,

        vs.

LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; LEROY BACA, in his official capacity as Sheriff of the County of Los Angeles; the COUNTY OF LOS ANGELES; LOS ANGELES COUNTY OFFICE OF EDUCATION; DARLINE P. ROBLES, in her official capacity as Superintendent of Los Angeles County Office of Education; LOS ANGELES UNIFIED SCHOOL DISTRICT; RAMON C. CORTINES in his official capacity as Superintendent of Los Angeles Unified School District; HACIENDA LA PUENTE UNIFIED SCHOOL DISTRICT; BARBARA NAKAOKA, in her official capacity as Superintendent of Hacienda La Puente Unified School District; the CALIFORNIA DEPARTMENT OF EDUCATION, a public entity; and JACK O'CONNELL, in his official capacity as Superintendent of Public Instruction for the State of California,

                              Defendants.

Case No. CV 09-8947

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR CIVIL RIGHTS VIOLATIONS**

**CLASS ACTION**

FILED
CLERK, U.S. DISTRICT COURT

DEC - 4 2009
4:07

CENTRAL DISTRICT OF CALIFORNIA
BY

Plaintiff Michael Garcia, by and through his counsel, Disability Rights Legal Center and Milbank, Tweed, Hadley and McCloy LLP, brings this Complaint against Defendants Los Angeles County Sheriff's Department; Leroy Baca, as Sheriff of the County of Los Angeles; the County of Los Angeles; Los Angeles County Office of Education; Darline P. Robles, as Superintendent of Los Angeles County Office of Education; Hacienda La Puente Unified School District; Barbara Nakaoka as Superintendent of Hacienda La Puente Unified School District; Los Angeles Unified School District; Ramon C. Cortines, as Superintendent of Los Angeles Unified School District; the California Department of Education; and Jack O'Connell, as Superintendent of Public Instruction for the State of California (collectively, the "Defendants"), over which this Court has jurisdiction (as discussed further below) under 28 U.S.C. §§ 1331, 1343 and 1367, and alleges as follows:

## **PRELIMINARY STATEMENT**

1.     Michael Garcia brings this action on his own behalf and on behalf of a class of others similarly situated in order to receive the special education services guaranteed to students with qualifying disabilities during their detention in Los Angeles County Jail ("LACJ") facilities. No school district currently provides these services at any LACJ facility in plain violation of both state and federal law. Further, the school district that provides a high school program in LACJ facilities, Hacienda La Puente Unified School District ("Hacienda La Puente"), does not currently modify its program to accommodate for individuals with disabilities who are eligible for special education. A systemic solution is needed to address Defendants' ongoing violations of state and federal law.

2.     Because no special education services are available in LACJ facilities, inmates who are eligible for and need special education are denied meaningful access to this high school education program. Defendants perpetuate this

-2-

discrimination without notice of the right to a hearing, violating the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.*, ("IDEA") and the regulations promulgated thereunder; Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.* (the "ADA"), and the regulations promulgated thereunder; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and the regulations promulgated thereunder; the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution; the California Constitution; and California law.

3.   The Los Angeles County Sheriff's Department ("Sheriff's Department"); Leroy Baca; Los Angeles County ("County"); Los Angeles County Office of Education ("LACOE"); Darline P. Robles, Hacienda La Puente; Barbara Nakaoka; the California Department of Education ("CDE"); and Jack O'Connell (collectively, the "First Request Defendants") have been on notice of their violations of law since November 2008.  The Los Angeles Unified School District ("LAUSD") has been on notice of its violations of law since at least February 2009.[1]  To date, not one of these Defendants has stated that the education programs in LACJ facilities comply with applicable state and federal law.  Nevertheless, for over one year, Defendants have failed to take any steps to provide Mr. Garcia with the education to which he is entitled.  Moreover, Defendants have failed to take any steps to ensure that the education programs in LACJ facilities provide special education and related services to all eligible inmates in accordance with both federal and state law.

4.   Mr. Garcia commenced a lawsuit against of the First Request Defendants before the California Office of Administrative Hearings Special Education Division ("OAH") in December 2008 to obtain such services.  (OAH

---

[1] In addition to receiving notice of the violations via Plaintiff's demand letter, LAUSD was notified by the CDE on or before February 5, 2009 that the CDE was investigating LAUSD's role in the collective failure to provide special education and related services to Mr. Garcia.

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case No. 2009010071.)  After the OAH found that it lacked jurisdiction over Mr. Garcia's claims, Mr. Garcia and another student filed a complaint in this court in March 2009 seeking to compel the First Request Defendants to comply with all applicable statutes, and to provide Mr. Garcia with the special education and related services to which he is entitled by law.  *Garcia, et al v. Los Angeles County Sheriff's Dep't, et al*, Case No. 2:09-cv-01513-VBF-CTx (C.D. Cal. 2009).  On May 29, 2009, the United States District Court dismissed these claims for failure to exhaust administrative remedies against the LAUSD, as a necessary and indispensible party to the action.

5.     Mr. Garcia filed a Request for Due Process before the OAH against the LAUSD on June 5, 2009 to exhaust his administrative remedies in accordance with the District Court's order.  (OAH Case No. 2009060442.)  On November 16, 2009, the OAH found that the LAUSD is in fact responsible for providing Mr. Garcia with a free and appropriate public education ("FAPE") during his incarceration and that it has failed to provide Mr. Garcia with special education and related services, or to adhere to the procedural safeguards required by IDEA and the California Education Code, for more than a year.  (Attached hereto as Exhibit A is a copy of the OAH order dated November 16, 2009.)  The OAH further ordered that "[i]t will be the [LAUSD's] responsibility to work with the Sheriff's Department and other correctional agencies to determine how best to implement that order to meet Student's unique education needs."  (Ex. A at 15, n.7.)  Having exhausted his administrative remedies, Mr. Garcia now returns to this Court for a systemic remedy that will provide the appropriate services to himself and the class at large.

6.     Mr. Garcia's struggle to receive the education services to which he is entitled highlights the need for a coordinated solution in LACJ facilities.  Each of the Defendants have failed in their obligations to provide special education and related services to Mr. Garcia and those similarly situated:

-4-

      a.    The OAH found that the LAUSD violated state and federal education laws by failing to provide special education and related services to Mr. Garcia during his detention in Men's Central Jail, one of the LACJ facilities. (Ex. A at 12-16.)

      b.    Separate from the LAUSD's responsibilities, Hacienda La Puente provides a high school program within LACJ facilities through a contract with the County and Sheriff's Department, but does not modify its program or provide accommodations for individuals with disabilities who are eligible for special education in clear violation of federal law.

      c.    LACOE is responsible for coordinating all education service providers in the County and ensuring that each provides services in accordance with applicable laws.

      d.    The CDE is also responsible for ensuring the provision of special education and related services to all eligible individuals in the State, including those detained in LACJ facilities.

      e.    Finally, the Sheriff's Department controls the movement of and care for individuals incarcerated in LACJ facilities.

      7.    Because the statutory scheme creates multiple overlapping responsibilities by simultaneously mandating that (i) Hacienda La Puente provide Mr. Garcia with access to its education program pursuant to the ADA and Section 504 and (ii) the LAUSD provide Mr. Garcia with an education pursuant to IDEA, Mr. Garcia seeks a systemic remedy whereby all Defendants must comply with all applicable statutes and offer appropriate services to all eligible students. Mr. Garcia and the class of similarly situated individuals cannot be afforded complete relief under the ADA and Section 504 if Hacienda La Puente is permitted to continue to provide a regular education program without modifications or accommodations for individuals with disabilities. The LAUSD alone cannot arrange for the provision of special education and related services because such

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    services will not remedy Hacienda La Puente's failure to provide Mr. Garcia and

2    the putative class with reasonable accommodations in accessing the education

3    program already in existence in LACJ facilities.

4        8.    Mr. Garcia seeks declaratory and injunctive relief in the form of an

5    order finding Defendants out of compliance with relevant laws and directing

6    Defendants to comply with all relevant laws by: (1) implementing a coordinated

7    system to provide special education and related services to all eligible persons in

8    all Sheriff's Department facilities; (2) providing notice of the procedural rights and

9    safeguards afforded to eligible individuals by state and federal law; (3) providing

10   compensatory education to Mr. Garcia and all eligible persons who have been in

11   the custody of the Sheriff's Department and have been denied these services; and

12   (4) paying Mr. Garcia's attorneys' fees and costs under applicable law.  Mr. Garcia

13   and the putative class of similarly situated students have suffered and continue to

14   suffer irreparable harm as a result of Defendants' ongoing refusal to provide

15   individualized special education to all eligible persons in LACJ facilities, and all

16   will continue to suffer further irreparable harm unless and until the Court grants

17   declaratory and injunctive relief against Defendants.

18                      **JURISDICTION AND VENUE**

19       9.    This action arises under the laws of the United States.  It seeks

20   declaratory and injunctive relief pursuant to the Civil Rights Act, 42 U.S.C.

21   § 1983, to redress the deprivation, under color of state law, of rights secured to Mr.

22   Garcia and similarly situated individuals by federal law.

23       10.   The first five claims in this Complaint arise under IDEA, Section 504,

24   the ADA, and the regulations promulgated thereunder, the United States

25   Constitution, and 42 U.S.C. § 1983.  The jurisdiction of this Court is invoked

26   pursuant to 28 U.S.C. §§ 1331 and 1343.

27       11.   Through the same acts and omissions that form the basis for Mr.

28   Garcia's federal claims, Defendants have also violated Mr. Garcia's rights under

-6-

state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as they derive from the same nucleus of operative facts as Mr. Garcia's federal claims.

12.    This Court has jurisdiction over Mr. Garcia's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, Federal Rules of Civil Procedure 57(d) and 65, as well as 42 U.S.C. § 1983, and authority pursuant to 42 U.S.C. §§ 1983 and 1988, 42 U.S.C. § 1415(i)(3) under IDEA, 42 U.S.C. § 12205 under the ADA, and 29 U.S.C. § 794a(b) under Section 504 to award the plaintiff reasonable attorneys' fees and costs.

13.    Venue over Mr. Garcia's claims is proper in the Central District of California because Defendants reside in the Central District of California within the meaning of 28 U.S.C. § 1391 and because the events, acts, and omissions giving rise to Mr. Garcia's claims occurred in the Central District of California. Each of Mr. Garcia's claims for relief arises within this State.  The Central District in Los Angeles provides the most convenient forum for the litigation of these issues.

## PARTIES

### Plaintiff and the Putative Class

14.    Plaintiff Michael Garcia is nineteen years old, is or has been detained in LACJ facilities and is eligible to receive special education and related services. (Ex. A at 7.)  He brings this lawsuit on behalf of himself and a class of similarly situated students who are, were, or will be eligible for special education and related services while detained in LACJ facilities.

15.    Mr. Garcia is a "qualified individual with a disability" within the meaning of all applicable statutes including 42 U.S.C. § 12131(2), 29 U.S.C. § 705(20)(B), and Cal. Gov't Code § 12926.  He is eligible to receive special education services and has been diagnosed with multiple disabilities, including

visual and auditory processing disorders and significant expressive and receptive language deficits.  (Ex. A at 7.)

16.    Mr. Garcia has been detained at Men's Central Jail, for over seventeen months since June 19, 2008.  Mr. Garcia has received no schooling since his incarceration at Men's Central Jail.  He has not graduated from high school with his diploma.

17.    While awaiting the resolution of his criminal case and while in the custody, care, and control of the Sheriff's Department, Mr. Garcia, as an individual and on behalf of a class of similarly situated students, seeks a FAPE in accordance with state and federal laws and the opportunity to work toward his high school diploma.

18.    Before his incarceration, Mr. Garcia attended the Barry J. Nidorf Juvenile Hall school.  Mr. Garcia's most recent annual Individualized Education Program ("IEP") was conducted on August 24, 2007, at the juvenile hall school, and an addendum to this IEP was made on May 5, 2008.

19.    In July 2009, at Mr. Garcia's request, neuropsychologist Dr. Carlos A. Flores assessed Mr. Garcia at the Men's Central Jail and verified that Mr. Garcia continues to need special education and related services.  Subsequently, Dr. Flores testified as an expert witness at Mr. Garcia's due process hearing against the LAUSD.  In accordance with Dr. Flores' assessment, in November 2009, the OAH held that Mr. Garcia has been and continues to be eligible to receive special education and related services during his incarceration.  (Ex. A at 7-8.)

20.    The putative class of plaintiffs ("Putative Class") consists of all students who are or were eligible for special education and related services under 20 U.S.C. §§ 1400, *et seq.* while detained at any LACJ facility, and who (a) are currently detained at any LACJ facility, (b) were released from any LACJ facility on or after December 4, 2007, or (c) are detained at any LACJ facility in the future.

**Defendants**

-8-

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*California Department of Education and Jack O'Connell as Superintendent of Public Instruction for the State of California*

21.     Defendant Jack O'Connell is sued in his official capacity as the State Superintendent of Public Instruction for the State of California.  Defendant O'Connell is and has been the State Superintendent for all time periods relevant to this Complaint.  Defendant O'Connell's administrative office is located in Sacramento, California.

22.     Defendant O'Connell, in his official capacity, has at all times relevant herein exercised general responsibility for and supervision and oversight of the policies, practices, and operations of all of the schools, school districts, county offices of education, local education agencies ("LEAs"), and special education local plan areas in the State pursuant to California Education Code sections 33000 *et seq*.

23.     As State Superintendent, Defendant O'Connell must assure and supervise the provision of special education and related services to eligible individuals.  Among his official duties, Defendant O'Connell is responsible for the promulgation, administration, supervision, and control of the rules, regulations, and policies regarding the apportionment of state and federal funds to LEAs and for apportioning those funds in a manner that serves all students who are eligible for special education.  Defendant O'Connell is also responsible for prescribing regulations that govern contracts, agreements, or arrangements with state or federal agencies for funds or services, developing criteria to be used by LEAs when developing their annual budgets and managing their expenditures from that budget, and overseeing their use of the budget in a manner consistent with IDEA.

24.     As State Superintendent, Defendant O'Connell is also responsible for "ensuring provision of, and supervising, education and related services to individuals with exceptional needs as specifically required pursuant to the Individuals with Disabilities Education Act."  Cal. Educ. Code § 56135.

Accordingly, Defendant O'Connell has the duty to ensure that all eligible students entitled to receive special education and related services in the state of California, including those students who are in jails, are afforded the opportunity to receive such services as well as notice of their procedural rights with regard to those services.

25.     As State Superintendent, Defendant O'Connell is the executive officer of the State Board of Education and is responsible for all executive and administrative functions of the California Department of Education. Cal. Educ. Code §§ 33301, 33303.

26.     Defendant CDE is the single State agency responsible for ensuring that all education agencies within the state, including each of the 917 school districts in the state of California, provide special education in compliance with state and federal laws. 20 U.S.C. § 1412(a); *see also* 20 U.S.C § 1407(e)(1)(c). In exchange for its receipt of federal funds, the state of California must provide assurance that it has in effect policies and procedures to ensure that California provides a FAPE to all eligible youth with disabilities between the ages of 3 and 22, ***including those detained in county jails***. 20 U.S.C. § 1412 (a)(11)(A). The CDE receives federal IDEA funds and allocates those funds to, among others, Defendants Hacienda La Puente, the LAUSD and LACOE. Defendant CDE is responsible for ensuring that the agencies that receive federal IDEA funds use those funds in accordance with state and federal laws, specifically the requirement that the agencies provide a FAPE to all eligible youth, including those incarcerated at LACJ facilities. 20 U.S.C. § 1412(a); *see also* 20 U.S.C §§ 1407, 1411(e)(1)(c).

27.     The CDE is a "public entity" as defined by Title II of the ADA.

***The County of Los Angeles***

28.     Defendant County is responsible for providing and maintaining the jail facilities and for funding these facilities in Los Angeles County. The County is also responsible for providing oversight to the Sheriff's Department and Defendant

Baca.  The County also promulgates policies and procedures regarding the county jail system.

29.    The County is a "public entity" as defined by Title II of the ADA.

30.    The County is charged with providing numerous services in LACJ facilities, including the education of detainees like Mr. Garcia.  Cal. Code Regs. tit. 15, § 1061; Cal. Penal Code § 6030.  To accomplish this, the County Board of Supervisors may either direct the County Superintendent of Schools to establish and maintain classes or schools for detainees in LACJ facilities or elect to establish and provide the classes itself.  Cal. Educ. Code §§ 1906, 1907.  If the Board of Supervisors chooses to maintain authority over LACJ facilities, it may contract with a school district to provide the classes and education services and pay for those services from the general fund of the County.  Cal. Educ. Code §§ 1907, 1908(b).  As set forth below, the Board of Supervisors has chosen to contract with Hacienda La Puente to provide the inmate education programs in the LACJ facilities.

**_Los Angeles County Sheriff's Department and the Los Angeles County Sheriff Leroy Baca_**

31.    Defendant Sheriff's Department is a local government entity created under the laws of the state of California, and is an agency of Defendant County.  The Sheriff's Department is responsible for operating the LACJ facilities, including promulgating policies and procedures at those facilities.

32.    Defendant Baca is sued in his official capacity as the Sheriff of Los Angeles County.  Defendant Baca is an elected official of the County and, at all times relevant herein, has been and continues to be responsible for oversight of Defendant Sheriff's Department and implementation of its policies, practices, and procedures.

33.    The Sheriff's Department is a "public entity" as defined by Title II of the ADA.

-11-

34.     As the custodian of eligible students like Mr. Garcia, the Sheriff must "plan and request of appropriate public officials an inmate education program." Cal. Code Regs. tit. 15, § 1061.[2] "When such services are not made available by the appropriate public officials," as is the case here, the Sheriff "shall develop and implement an education program with available resources." *Id.*

35.     Such education programs are funded by local, state, and federal funds. The public entities providing such programs may not, therefore, discriminate against people with disabilities, including, but not limited to, the failure to provide access to services and the services themselves, in violation of laws such as the ADA and Section 504.

36.     The Sheriff's Department is also a service provider or an LEA as defined in 20 U.S.C. § 1401(19).  The Sheriff's Department receives federal financial assistance.

37.     As an LEA currently providing education in the jail, the Sheriff's Department may not discriminate against people with disabilities, in violation of IDEA.

***Los Angeles Unified School District and Ramon C. Cortines as Superintendent of Los Angeles Unified School District***

38.     Defendant Ramon C. Cortines is sued in his official capacity as the Superintendent of the LAUSD.  Defendant Cortines' administrative office is located in Los Angeles County, California.  As Superintendent, Defendant Cortines is responsible for ensuring that the LAUSD provides education and special education services in accordance with state and federal law.

---

[2] Section 1061 states that "The facility administrator of any Type II or III facility shall plan and request of appropriate public officials an inmate education program.  When such services are not made available by the appropriate public officials, then the facility administrator shall develop and implement an education program with available resources." Cal. Code Regs. tit. 15, § 1061.  "Facility administrator" is defined as "the sheriff, chief of police, chief probation officer, or other official charged by law with the administration of a local detention facility/system." Cal. Code Regs. tit. 15, § 1006.

39.     The LAUSD is an LEA as defined in 20 U.S.C. § 1401(19).  The LAUSD receives federal financial assistance under IDEA.

40.     In its ruling on November 16, 2009, the OAH determined that pursuant to the California Education Code, the LAUSD is the LEA responsible for providing special education and related services to Mr. Garcia.  (Ex. A at 8-12.) Applying this statutory interpretation, the LAUSD is also responsible for providing special education and related services to all LACJ inmates for whom it is the "last district of residence in effect prior to the pupil's attaining the age of majority," as well as for eligible students whose parents currently reside within its boundaries. Cal. Educ. Code §§ 56041, 48200.

41.     In its November 16, 2009 decision, the OAH also determined that the LAUSD is the LEA responsible for providing Mr. Garcia with compensatory education for the year during which Mr. Garcia was detained at an LACJ facility without any special education or related services.  (Ex. A at 8-12.)  In accordance with this OAH decision, the LAUSD is also responsible for providing compensatory education services to all LACJ inmates who have not or did not receive services while at LACJ facilities and whose parents reside or resided within the LAUSD's boundaries during his or her incarceration.

42.     Further, the OAH also determined that the LAUSD failed to comply with the procedural requirements of IDEA and California education law by (i) failing to notify Mr. Garcia of his procedural rights, (ii) failing to adopt or develop an IEP for Mr. Garcia within 30 days of his transfer to an LACJ facility, (iii) failing to hold an annual IEP meeting, and (iv) subsequent to Mr. Garcia's written requests for special education services, failing to provide him with notice of the LAUSD's reasons for refusing to provide such services.  (Ex. A at 13.)

43.     The LAUSD is a "public entity" as defined by Title II of the ADA.

44.     As a public entity receiving federal funds, the LAUSD may not discriminate against people with disabilities, in violation of laws such as the ADA and Section 504.

***Hacienda La Puente Unified School District and Barbara Nakaoka as Superintendent of Hacienda La Puente Unified School District***

45.     Defendant Barbara Nakaoka is sued in her official capacity as the Superintendent of Hacienda La Puente.  Defendant Nakaoka's administrative office is located in Los Angeles County, California.  As Superintendent, Defendant Nakaoka is responsible for ensuring that Hacienda La Puente provides education and special education services in accordance with state and federal law.

46.     Hacienda La Puente is a "public entity" as defined by Title II of the ADA.

47.     Defendant Hacienda La Puente is under contract to provide general education services to inmates in each of the LACJ facilities.  (Attached hereto as Exhibit B is a copy of the contract between Hacienda La Puente, the County, and the Sheriff's Department.)  Pursuant to this contract, Hacienda La Puente administers and implements the Correctional Education Program.

48.     Hacienda La Puente is contractually responsible for providing education services at all eight of the correctional facilities in the LACJ system throughout Los Angeles County.  Hacienda La Puente has acknowledged that although it has implemented a general education program in the LACJ facilities, it does not offer a special education program to serve students with disabilities.  Likewise, Hacienda La Puente does not modify the existing program or provide reasonable accommodations for students with disabilities.

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

49.     As a public entity receiving federal funds, Hacienda La Puente may not discriminate against people with disabilities, in violation of laws such as the ADA and Section 504.[3]

50.     Hacienda La Puente is also an LEA as defined in 20 U.S.C. § 1401(19). Hacienda La Puente receives federal financial assistance under IDEA.

51.     As an LEA currently providing education in the jail, Hacienda La Puente may not discriminate against people with disabilities, in violation of IDEA.

***Los Angeles County Office of Education and Darline P. Robles as Superintendent of the Los Angeles County Office of Education***

52.     Defendant Darline P. Robles is sued in her official capacity as the Superintendent of Defendant LACOE.  Among her official duties as County Superintendent, Defendant Robles is required to, *inter alia*, "maintain responsibility for the fiscal oversight of **each school district** in…her county," "visit and examine **each school** in his or her county at reasonable intervals to observe its operation and to learn of its problems," "enforce the course of study," and verify at least annually that "pupils who have not passed the high school exit examination by the end of grade 12 are informed that they are entitled to receive intensive instruction and services for up to two consecutive academic years after completion of grade 12" and see that they receive such services.  Cal. Educ. Code §§ 1240(b), (c)(1), (h), and (c)(2)(E)(i),(ii), respectively (emphasis added).

53.     Defendant LACOE is also an LEA as defined in 20 U.S.C. § 1401(19).  LACOE receives federal financial assistance under IDEA.  It is therefore responsible for providing all school-eligible persons with disabilities who reside in the County with special education programs administered in compliance

---

[3] Although the OAH found that the LAUSD is the responsible LEA for providing Plaintiff with special education, Plaintiff and the class of similarly situated individuals cannot obtain complete relief under the ADA and Section 504 if the Court permits Hacienda La Puente to continue to discriminate on the basis of disability. *See* ¶¶ 131-32 below.

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

with federal and state laws and regulations.  20 U.S.C. § 1413; Cal. Educ. Code § 56140(a).

54.   LACOE is a "public entity" as defined by Title II of the ADA.

55.   As a public entity receiving federal funds, LACOE may not discriminate against people with disabilities in violation of laws such as the ADA and Section 504.

56.   Additionally, LACOE administers the education programs at each of the juvenile halls located within the County.  As such, LACOE is responsible for the transfer of special education eligible students from the juvenile hall facilities to the adult correctional facilities in the LACJ.

57.   Defendant LACOE also has an independent duty to ensure that all individuals who qualify for special education services have access to appropriate special education programs and related services, including detained students.  20 U.S.C. § 1413; Cal. Educ. Code § 56140(a).

58.   Defendant LACOE must fulfill its duty by, among other things, reviewing and approving the local plans developed by school districts within the County, including Defendants Hacienda La Puente and the LAUSD, before those local plans are submitted to the CDE for review.  By approving a local plan, Defendant LACOE makes assurances to the CDE that LACOE has determined that the districts governed by that plan have the capacity to ensure that special education programs and services are provided to *all* students who require such services.

### Defendants Generally

59.   The County and Sheriff's Department Defendants are "persons" subject to suit as local and municipal governments within the meaning of 42 U.S.C. § 1983 under *Monell v. New York Department of Social Services*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Pursuant to California Government Code section 815(a), these Defendants are liable for any and all

wrongful acts in violation of state statute as provided herein and committed by any of these Defendants' agents and employees acting within the course and scope of their agency or employment.

60.  Defendants Leroy Baca, as Sheriff of the County of Los Angeles; Darline P. Robles, as Superintendent of Los Angeles County Office of Education; Barbara Nakaoka as Superintendent of Hacienda La Puente; Ramon C. Cortines as Superintendent of the LAUSD; and Jack O'Connell, as Superintendent of Public Instruction for the State of California (hereinafter the "Administrative Defendants") are sued in their official capacities only.  Here, Mr. Garcia sues the Administrative Defendants for prospective relief to enjoin the Administrative Defendants from continuing to deny Mr. Garcia, and students similarly situated, the special education and related services guaranteed to them under various federal and state laws and the United States and California Constitutions.

61.  The term "Defendants" shall include Paragraphs 21 through 60, inclusive, above.

## CLASS ACTION ALLEGATIONS

62.  Mr. Garcia brings this action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) for himself and on behalf of a Putative Class of all other persons similarly situated.  The Putative Class consists of all students who are or were eligible for special education and related services before their twenty-second birthday pursuant to 20 U.S.C. §§ 1400, *et seq.*, while detained at any LACJ facility, and who (a) are currently detained at any LACJ facility, (b) were released from any LACJ facility on or after December 4, 2007, or (c) are detained at any LACJ facility in the future.

63.  Defendants do not offer special education and related services to eligible students in any LACJ facility as required by IDEA, Section 504, the ADA, the United States Constitution, the California Constitution, and the analogous state statutes.

64.     Defendants have implemented no policies or procedures to provide special education and related services to eligible students within any of the LACJ facilities.

65.     Defendants have collectively failed to implement any policies or procedures that seek out individuals with disabilities during their incarceration in violation of the California Education Code and IDEA.  *See, e.g.* Cal. Educ. Code §§ 56300, 56301.

66.     The violations of IDEA, the ADA, Section 504, the United States and California Constitutions, and the state laws described herein, have injured and continue to injure all members of the Putative Class and violate their rights.

67.     All of the requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure are met with regard to the Putative Class because:

a)      The class is so numerous that it would be impractical to bring all class members before the Court;

b)      There are common questions of law and fact to the class;

c)      The named Plaintiff's claims for declaratory and injunctive relief are typical of the claims of the class that he seeks to represent in that Mr. Garcia and the Putative Class are all individuals who are eligible to receive special education and related services who have been, are, or will be incarcerated at any LACJ facility, and as a result of the Defendants' actions and omissions have suffered, are suffering, or will suffer from one or more violations enumerated herein;

d)      The named Plaintiff will fairly and adequately represent common class interests and is represented by counsel who are experienced in law reform class actions and the special education issues in this case;

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

e)    Defendants have acted or refused to act on grounds generally applicable to the class;

f)    The questions of law and fact that are common to the class predominate over any individual questions of class members; and

g)    A class action is superior to other available means of resolving this controversy.

68.    The Putative Class is so numerous that joinder is impracticable because, as described *supra*, it includes past, current, and future students who are or were eligible for special education and related services under 20 U.S.C. §§ 1400, *et seq.* while detained at any LACJ facility.  Moreover, the inmate population within LACJ facilities changes constantly and not all class members can be specifically-identified.

69.    Plaintiff's counsel estimates that the Putative Class may include at least 800 eligible students detained at LACJ facilities on any given day.

70.    The common questions of law and fact that Mr. Garcia and Putative Class members share include:

a)    Whether LACOE, the CDE, the LAUSD, Hacienda La Puente, the Sheriff's Department, and the County are violating IDEA and its implementing regulations by failing to provide identification, assessment, and special education and related services to students with disabilities who are eligible for special education and related services in LACJ facilities;

b)    Whether Defendants LACOE, the CDE, the LAUSD, the Sheriff's Department, Hacienda La Puente, and the County are violating IDEA and its implementing regulations by failing to provide notice of the rights of students with disabilities who are eligible for special education and related services in LACJ facilities to a due

process hearing to contest the denial of services, identification, and assessment;

c)   Whether all Defendants are violating Section 504 and its implementing regulations, by failing to provide identification, assessment, and special education and related services and accommodations to students with disabilities who are eligible for these services in LACJ facilities;

d)   Whether all Defendants are violating Title II of ADA and its implementing regulations by failing to provide identification, assessment, reasonable modifications and related services to students with disabilities who are eligible for these services in LACJ facilities;

e)   Whether the County and the Sheriff's Department are violating the California Constitution by failing to provide identification, assessment, special education and related services and accommodations to students with disabilities who are eligible for these services in LACJ facilities;

f)   Whether the County and the Sheriff's Department are violating California Education Code section 56040 by failing to provide identification, assessment, and special education and related services and accommodations to students with disabilities who are eligible for these services in LACJ facilities;

g)   Whether the County and the Sheriff's Department are violating California Government Code section 11135 by failing to provide identification, assessment, special education and related services, and accommodations to eligible students with disabilities at LACJ facilities; and

h)   Whether the County, the Sheriff's Department, and the Administrative Defendants are violating the Fourteenth Amendment

-20-

to the United States Constitution by failing to provide notice to students of their rights to receive special education and related services and accommodations and by failing to provide identification, assessment, special education and related services, and accommodations to students with disabilities who are eligible for these services in LACJ facilities.

## STATEMENT OF FACTS

### The Los Angeles County Jail

71.     The LACJ facilities comprise the largest jail system in the nation, processing more than 180,000 people per year.  The LACJ facilities comprise eight separate facilities and houses over 19,000 people at any given time.  Of the eight facilities, Men's Central Jail, Twin Towers, the Century Regional Detention Facility, the North County Correctional Facility, and Pitchess Detention Center all provide general education opportunities to inmates.

72.     The LACJ facilities are Type II and Type III facilities.

73.     Many of the inmates detained in LACJ facilities are students eligible for special education, related services, and accommodations.

74.     Despite the large numbers of students with disabilities eligible for special education, Defendants do not work collectively to seek out these individuals with disabilities who are incarcerated in the LACJ facilities as required by the California Education Code and IDEA. *See* Cal. Educ. Code §§ 56300, 56301.

75.     Defendants do not provide any special education and related services to eligible students.

76.     State and federal law requires that Defendants develop IEPs for the eligible students in the LACJ facilities.

77.     Defendants do not request, obtain, or transfer the IEPs of previously identified students from the students' previous education programs.

-21-

78.     Defendants do not determine where the parents of eligible students reside.

79.     Eligible students at LACJ facilities are not notified that Defendants have refused to work collectively to identify persons who are eligible to receive special education and related services, as IDEA requires.  20 U.S.C. § 1412(a)(3).  Nor are eligible students at the LACJ facilities or their families notified of the procedural safeguards that exist under IDEA when identification is not initiated, such as the right to submit a complaint and the right to a hearing on that complaint.

80.     Further, eligible students at the LACJ facilities are not notified that Defendants have refused to provide required services to school-aged persons who are eligible to receive special education and related services, as IDEA requires.  20 U.S.C. § 1415.

81.     Defendants do not provide teachers certified and trained in teaching persons with disabilities to instruct special education students who are in the custody of the Sheriff's Department.

82.     Defendants have failed to provide special education and related services and reasonable accommodations to Mr. Garcia and members of the Putative Class.

83.     Defendants discriminate against Mr. Garcia and members of the Putative Class by failing to provide them with special education and related services and by failing to reasonably modify their existing general education services and programs to make them meaningfully accessible.

84.     The above failings, in combination with the systematic disregard for individuals with disabilities in the jail facilities who are eligible for special education and related services or who require accommodations, ensure that the entire population of eligible students with disabilities in LACJ facilities are not receiving the education, related services, and reasonable accommodations guaranteed to them by IDEA and the other state and federal laws described herein.

-22-

**Plaintiff Michael Garcia**

85.     Mr. Garcia is currently detained at Men's Central Jail, where he has been held since on or about June 19, 2008.  Since that time, no Defendant has offered or provided Mr. Garcia any special education or related services, nor have the Defendants County, Sheriff's Department and/or Hacienda La Puente provided him with any reasonable accommodations for his disability in order to participate in the general education services provided by them.

86.     Defendants have not provided Mr. Garcia with notice that he has the right to receive such services while detained nor have they provided him with notice of his procedural rights, including his right to a due process hearing to challenge the denial of these services.

87.     Mr. Garcia's mother resides within the boundaries of both the LAUSD and the County.  According to Mr. Garcia's most recent annual IEP, conducted on August 24, 2007, at Barry J. Nidorf Juvenile Hall school, Mr. Garcia has been eligible for special education since the third grade.  The OAH has affirmed his continuing eligibility for special education and related services.  (Ex. A at 7-8.)

88.     Mr. Garcia would like education services during his detention so that he can achieve his dream of graduating from high school and attending college.

89.     Mr. Garcia's most recent IEP states that Mr. Garcia is eligible to receive special education services under the categories of "Specific Learning Disability" and "Speech and Language Impairment."  The IEP provides for: (1) placement in a special day class for the entire school day (totaling 240 minutes per day of instruction), (2) speech and language therapy for 45 minutes per week, (3) counseling for 30 minutes per week, and (4) the help of a behavior management assistant for 30 minutes per week.  Mr. Garcia is also eligible for extended school year instruction.

90.     To date, Mr. Garcia has lost the education benefit of one and one-half years of academic instruction and speech and language services.

91.     In its November 16, 2009 decision, the OAH held that Mr. Garcia is entitled to receive special education and related services from the LAUSD while detained within an LACJ facility.  (Ex. A at 7, 17.)

92.     Further, the OAH has held that the LAUSD is responsible "to work with the Sheriff's Department and other correctional agencies to determine how best to implement [the OAH] in order to meet [Mr. Garcia's] unique education needs[.]" (*Id.* at 15, n.7.)

93.     Mr. Garcia is only one of many detained students between the ages of 18 and 22 who are being deprived of their right to special education and related services and reasonable accommodations.

94.     Prior to Mr. Garcia's transfer to an LACJ facility, he was detained at the Barry J. Nidorf Juvenile Hall and attended the school there.

95.     On or about May 8, 2008, Robert Wasserman, a school psychologist for LACOE, conducted a Functional Assessment Analysis of Michael Garcia at the Barry J. Nidorf Juvenile Hall School.

96.     In this analysis, Mr. Wasserman described two behaviors that significantly affected Mr. Garcia's education and recommended that members of his IEP team meet to discuss the findings.

97.     Mr. Wasserman determined that due to Mr. Garcia's "limited time left in a formal education setting, it is not recommended that a formal positive behavior intervention plan be conducted as ***it will not be followed when he leaves the hall around the first week of June 2008 to be placed in an adult facility*.**"  (emphasis added).[4]

---

[4] As the OAH acknowledged, this FAA was never addressed at an IEP team meeting as Mr. Garcia left the juvenile hall shortly after its completion.

98.   Mr. Garcia's Functional Analysis Assessment offers troubling evidence that LACOE officials were aware of the unlawful absence of special education services in the adult correctional facilities and did nothing to protect the rights of Mr. Garcia and students similarly situated.

**Education within the Los Angeles County Jail**

99.   Pursuant to the contract between Defendants Hacienda La Puente, the County, and the Sheriff's Department, dated April 30, 1991, Hacienda La Puente provides an academic and vocational education program to inmates detained in LACJ facilities. (*See* Ex. B.) This education program is described as teaching "basic elementary school subjects, required high school subjects, and elective subjects leading to elementary school graduation and/or high school graduation. The subjects will include English, reading, writing, penmanship, spelling, geography, United States Constitution, arithmetic, general mathematics, algebra, geometry, first aid, and other academic or vocational subjects mutually agreed upon by the DISTRICT and the SHERIFF." (Ex. B at 2.) The contract provides that the County will reimburse Hacienda La Puente for the costs of operating the program. (*Id*. at 2-4.)

100.   The contract further provides that Hacienda La Puente, the County, and the Sheriff's Department will meet each year to execute an Annual Joint Operating Plan that "specif[ies] the classes to be provided for the next fiscal year, including their specifications and locations," and is "supplemented by class schedules agreed to by the SHERIFF'S DEPARTMENT, Inmate Services Bureau Commander, and School Supervisor, which shall specify the dates upon which the classes are to be initiated and maintained, the number of classes, written objectives, content of courses, and general description of methods to be used to obtain the objectives." (*Id*. at 4-5.) The class schedules "are subject to the approval of the Division of Continuing Education as prescribed in the Educational Code," and "subject to the approval of the State Board of Education[.]" (*Id*. at 5.) "Such class

schedules shall be kept on file at the SHERIFF'S FACILITIES BY THE DISTRICT and reported to the California Department of Education." (*Id.*)

101.   Defendants Hacienda La Puente, the County, and the Sheriff's Department have acknowledged that although there is a program for general education, there is no program in place to provide special education and related services to eligible students with disabilities detained in LACJ facilities.

102.   The OAH determined that Defendant LAUSD is an LEA responsible for the provision of education to Mr. Garcia and that it must coordinate with the Sheriff's Department and other correctional agencies to determine how to best implement the education program order in its decision issued on November 16, 2009.  To date, however, the LAUSD has yet to coordinate with the other Defendants in order to provide such services.

103.   The absolute failure to provide special education and related services to eligible students or to modify existing programs for them is pervasive and systemic.  Just as no mechanism exists to provide these students with special education and related services, no mechanism exists to provide eligible youth notice of their right to a due process hearing to challenge the denial of special education services or to otherwise complain about the education program generally provided by Hacienda La Puente or their last district of residence.  This problem impacts every eligible student detained in all LACJ facilities.

104.   Defendants Hacienda La Puente, LACOE, the LAUSD, the Sheriff's Department, and the County, exclude Mr. Garcia and members of the Putative Class from education services because of their disabilities.  Defendants Hacienda La Puente, LACOE, the LAUSD, the Sheriff's Department, and the County do not reasonably modify their education services or provide reasonable accommodations to Mr. Garcia and members of the Putative Class so that they may have meaningful access to these education services.

105. As set forth herein, all Defendants have duties to ensure that special education and related services are provided and reasonable accommodations in their general education programs are made in accordance with state and federal laws and regulations. Defendants have failed to fulfill these obligations and consequently they have violated Mr. Garcia's and the Putative Class' right to special education and related services, and denied them notice of their rights with regard to these services as well as meaningful access to the existing general education services available in LACJ facilities.

106. Defendant Barbara Nakaoka, in her official capacity as Superintendent of the Hacienda La Puente, has a duty to ensure that the education services provided by Defendant Hacienda La Puente do not discriminate against students with disabilities, and are provided in accordance with IDEA, California Education Code, and other relevant state and federal statutes and regulations.

107. Defendant Nakaoka has failed to carry out these obligations by failing to ensure that Mr. Garcia and the Putative Class members have meaningful access to Hacienda La Puente's general education program in LACJ facilities and by failing to ensure that they are afforded special education and related services and notice of their rights with regard to these services. Defendant Nakaoka has failed to carry out these obligations and duties, as well as the duties set forth and alleged in paragraphs 45-51 herein.

108. Defendant Ramon C. Cortines, in his official capacity as Superintendent of the LAUSD, has a duty to ensure that the education services provided by the LAUSD do not discriminate against students with disabilities, and are provided in accordance with IDEA, California Education Code, and other relevant state and federal statutes and regulations.

109. Defendant Cortines has failed to carry out these obligations by failing to ensure that Mr. Garcia and the Putative Class members have meaningful access to the LAUSD's district-wide general education program and by failing to ensure

-27-

that they are afforded special education and related services and notice of their rights with regard to these services. Defendant Cortines has failed to carry out these obligations and duties, as well as the duties set forth and alleged in paragraphs 38-44 herein.

110. Similarly, Defendant Darline P. Robles, in her official capacity as Superintendent of LACOE, has a duty to ensure that LACOE coordinates with the Special Education Local Plan Areas to ensure that all of the students within the County are receiving services consistent with the provisions of state and federal laws and regulations. Defendant Robles also has a duty to ensure that the education services provided by LACOE do not discriminate against students with disabilities, and are provided in accordance with IDEA, the California Education Code, and other relevant state and federal statutes and regulations.

111. Defendant Robles has failed to carry out these obligations by failing to ensure that Mr. Garcia and the Putative Class members have meaningful access to LACOE's county-wide education program and by failing to ensure that they are afforded special education and related services and notice of their rights with regard to these services. Defendant Robles has failed to carry out these obligations and duties, as well as the duties set forth and alleged in paragraphs 52-58 herein.

112. Defendant Jack O'Connell, in his official capacity as Superintendent of Public Instruction, has a duty to ensure that by and through the CDE's receipt of federal IDEA funding, the CDE carries out its responsibility to be the single state agency with the ultimate oversight of every education provider in the state to ensure that all youth with special education needs are receiving services in accordance with state and federal laws. Defendant O'Connell has failed to carry out these obligations and duties, as well as the duties and obligations set forth and alleged in paragraphs 21-27 herein.

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

113.   The State of California receives federal funding under IDEA and Section 504.  All Defendant agencies receive funds from the federal government and are public entities as defined by Title II of the ADA.

**Procedural History**

114.   On November 11, 2008, Mr. Garcia, by and through his counsel of record, sent a demand letter to the Sheriff's Department, the County, CDE, LACOE, and Hacienda La Puente.  In his demand letter, Mr. Garcia requested, *inter alia*, that these Defendants provide Mr. Garcia and those similarly situated with special education and related services by adopting a system to provide such services within LACJ facilities.  Thus, the First Request Defendants have been on notice of their violations of law for more than one year.  Mr. Garcia did not send a demand letter to the LAUSD at that time.

115.   The First Request Defendants refused to meet Mr. Garcia's demands.  Instead, each Defendant denied that it was responsible for providing special education and related services to Mr. Garcia and any other similarly situated individuals.

116.   In order to: (i) ensure that Mr. Garcia received special education and related services as soon as possible, (ii) force discussions between the responsible entities about their non-compliance with the law, and (iii) secure an administrative determination of which agency or agencies would provide the required special education and related services, Mr. Garcia filed a Request for Due Process ("First Request") with the OAH on December 23, 2008.

117.   In his First Request, Mr. Garcia asked the OAH to remedy the First Request Defendants' failure to provide him and all other similarly situated youth with a FAPE, to order the First Request Defendants to work with a correctional education and special education expert to adopt a system to identify eligible detainees and provide them with a FAPE, and to retain that expert to monitor implementation of the system in LACJ facilities.  Because of the ongoing denial of

-29-

services to Mr. Garcia and similarly situated youth, the First Request also sought a process to determine compensatory education for these individuals.

118.   On January 7, 2009, counsel for Mr. Garcia met with the First Request Defendants for a Resolution Session, a meeting required prior to a due process hearing.  During that meeting, the First Request Defendants again refused to take responsibility for the abject lack of special education services provided in LACJ facilities.  The parties discussed the general nature of the system that would provide the required special education services, but the First Request Defendants remained steadfast in their refusal to implement systemic relief to all similarly situated students.

119.   On January 8, 2009, OAH Administrative Law Judge Debra Huston dismissed the class claims filed on behalf of students similarly situated to Mr. Garcia because the OAH lacked jurisdiction over such claims.  This dismissal comports with the OAH's inability to grant class relief as limited by California law.  Cal. Code Regs. tit. 5, § 3089.  The OAH also administratively excluded the Sheriff's Department and Defendant Baca from the Due Process hearing.  The dismissal of claims for students similarly situated and the dismissal of the Sheriff's Department from the matter made the OAH Due Process Hearing insufficient to render complete relief to Mr. Garcia because it could not implement the systemic changes necessary to properly provide special education services to even Mr. Garcia.

120.   No First Request Defendant disputed the fact that the law provides Mr. Garcia with the right to a FAPE under IDEA, even while incarcerated in an LACJ facility.  Rather than defending on the merits, the First Request Defendants responded to the First Request with a flurry of procedural and technical defenses aimed at denying their individual responsibility for compliance with the law.

121.   On February 9, 2009, the OAH issued an Order Granting and Denying Motions to Dismiss or Restore Parties and Order Dismissing the Complaint

-30-

("Order Dismissing Complaint"), effectively dismissing every named First Request Defendant. (Attached hereto as Exhibit C is a copy of the February 9, 2009, Order Dismissing Complaint issued by the OAH.) In the Order Dismissing Complaint, the OAH ruled that (1) under IDEA and related statutes, eligible students should continue to receive special education and related services while incarcerated in either a juvenile or adult correctional facility, unless a student was not identified as being a child with a disability prior to being incarcerated (*Id.* at 3), (2) the district responsible for provision of special education and related services in an LACJ facility is the student's "last district of residence in effect prior to the pupil's attaining the age of majority" under Cal. Educ. Code section 56041(a) (*Id.* at 6), and (3) OAH jurisdiction in special education due process hearings did not extend to agencies such as the First Request Defendants who make "system-wide decisions about the provision of special education generally, or agency-wide compliance with law, or the structure of special education programs in particular institutions." (*Id.* at 7). Although the OAH determined that Mr. Garcia is entitled to special education services while detained in an adult correctional facility, it was on the basis of rulings (2) and (3) that the OAH dismissed the First Request Defendants to the Due Process action.

122.   Specifically, the OAH found that the primary responsibility for providing a FAPE rests on the LEA identified as the district of Mr. Garcia's parents' residence.

123.   Because Mr. Garcia seeks a systemic remedy whereby the provision of special education and related services in LACJ facilities complies with *all* applicable laws, Mr. Garcia filed a complaint against the First Request Defendants in the United States District Court for the Central District of California ("First Complaint"). In Mr. Garcia's complaint, he asserted that Hacienda La Puente and LACOE, among others, were LEAs responsible for the direct provision of

services.[5]  Minutes of In Chambers Order Held Before Judge Valerie Baker Fairbank re: Hearing on Defendants' Motions to Dismiss, Ruling on Submitted Matter, Docket No. 129, *Garcia, et al v. Los Angeles County Sheriff's Dep't, et al*, Case No. 2:09-cv-01513-VBF-CT (C.D. Cal., May 29, 2009).

124.  All First Request Defendants filed motions to dismiss.

125.  On May 27, 2009, the District Court, the Honorable Valerie Baker Fairbank presiding, held a hearing on the First Request Defendants' motions to dismiss.  At the hearing, counsel for the County, the Sheriff's Department, and Defendant Baca stated that "there is not going to be a circumstance where the sheriff's department would lock the doors and say to a known educational entity that requested to come in and provide special education services: you can't come in."  Transcript of Proceedings Held on 5/27/09 at 64:2-21, Docket No. 136, *Garcia, et al v. Los Angeles County Sheriff's Dep't, et al*, Case No. 2:09-cv-01513-VBF-CT (C.D. Cal., June 30, 2009).

126.  Following the May 27, 2009 hearing, the District Court dismissed Mr. Garcia's claims, holding that Mr. Garcia must exhaust his claims against the LAUSD before the determination of any systemic issues because Mr. Garcia's mother resides within the LAUSD's boundaries and any determination as to an LEA responsible for providing Mr. Garcia with services will necessarily impact the interests of the LAUSD.  Minutes of In Chambers Order Held Before Judge Valerie Baker Fairbank re: Hearing on Defendants' Motions to Dismiss, Ruling on Submitted Matter, Docket No. 129, *Garcia, et al v. Los Angeles County Sheriff's Dep't, et al*, Case No. 2:09-cv-01513-VBF-CT (C.D. Cal., May 29, 2009).

127.  On June 5, 2009, Mr. Garcia filed a second Request for Expedited Due Process ("Second Request") asking the OAH to order the LAUSD to provide Michael Garcia with a FAPE during his detention at Men's Central Jail.

---

[5] In the First Complaint, Mr. Garcia also asserted that Puente Hills SELPA and Southwest SELPA were responsible for providing services when other entities failed to do so.

128.   Despite counsel's representations to the District Court in the hearing on May 27, 2009 that the Sheriff's Department would not prevent an educational entity from providing special education in LACJ facilities, the Sheriff's Department initially refused to cooperate with Mr. Garcia in his attempts to receive these services through a Due Process Hearing.  On July 28 and August 6, 2009, Mr. Garcia filed status reports with the OAH detailing the Sheriff's Department's noncooperation with securing Mr. Garcia's testimony at his Due Process Hearing. After nearly two weeks of discussions, the Sheriff's Department finally agreed to make Mr. Garcia available for his Due Process Hearing via telephone.   These difficulties demonstrate the need for broad class-based relief here.  A student seeking the education services he is entitled to under the law ought to be able to access the due process procedures without encountering blatant obstructionist conduct designed to compromise (through procedural gamesmanship) his rights.

129.   On August 13, September 10, and October 14, 2009, the OAH held hearings on Mr. Garcia's Second Request.

130.   On November 16, 2009, the OAH issued an order finding that: (i) Mr. Garcia is eligible to receive special education services during his incarceration, (ii) the LAUSD is an LEA responsible for providing special education to Mr. Garcia, (iii) the LAUSD has denied Mr. Garcia a FAPE since June 19, 2008, by failing to offer or provide him with any special education or related services, (iv) the LAUSD denied Mr. Garcia a FAPE by failing to comply with the procedural requirements of IDEA and California education law; and (v) Mr. Garcia is entitled to one-on-one instruction and compensatory education as a result of the LAUSD's denial of a FAPE.  (Ex. A at 7-16.)

131.   Although the OAH found that the LAUSD is an LEA responsible for providing Mr. Garcia with special education, Mr. Garcia and the class of similarly situated individuals cannot be afforded complete relief under the ADA and Section 504 if Hacienda La Puente is permitted to continue to provide a regular education

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

program without modifications or accommodations for individuals with disabilities. The LAUSD alone cannot arrange for the provision of special education and related services because such services will not remedy Hacienda La Puente's failure to provide Mr. Garcia and the Putative Class with reasonable accommodations in accessing the education program already in existence in LACJ facilities.

132. Thus, because the statutory scheme creates multiple overlapping responsibilities by simultaneously mandating that Hacienda La Puente provide Mr. Garcia with access to its education program pursuant to the ADA and Section 504 and that the LAUSD provide Mr. Garcia with an education pursuant to IDEA, Mr. Garcia seeks a systemic remedy whereby all Defendants must comply with all applicable statutes and offer appropriate services to all eligible students.

133. The actions, inactions, and omissions of Defendants that are recited above have resulted in, and will continue to cause Mr. Garcia and members of the Putative Class to suffer irreparable harm, discrimination, and academic regression.

134. Mr. Garcia and members of the Putative Class have no other adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### (Violation of IDEA Against LACOE, the LAUSD, Hacienda La Puente, CDE, the Sheriff's Department, and the County)

135. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

136. Under IDEA, as recipients of federal education funds, the CDE, LACOE, Hacienda La Puente, and the LAUSD have the duty to provide a FAPE to all people with disabilities until a person's twenty-second birthday. 20 U.S.C. §§ 1412(a)(1),(b), 1413(a).

137.   This duty extends to students eligible for special education who are incarcerated in juvenile and adult correctional facilities.  34 C.F.R. § 300.2(b)(iv).

138.   A FAPE consists of special education *and* related services that are consistent with curriculum standards set by the state of California and conform to the student's IEP.  20 U.S.C. § 1401(9).

139.   Special education is "specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability."  20 U.S.C. § 1401(29).

140.   In addition, students who are over sixteen years of age are also entitled to receive transition planning services that ensure "equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities."  20 U.S.C. § 1400(c)(1).

141.   California Education Code section 56041 directs that "the last district of residence in effect prior to the pupil's attaining the age of majority shall become and remain as the responsible LEA, as long as and until the parent or parents relocate to a new district of residence."

142.   IDEA defines an eligible student with a disability as a person "with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . ., orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities" "who, by reason thereof, needs special education and related services."  20 U.S.C. § 1401(3).

143.   Defendants Hacienda La Puente, LACOE, the LAUSD, and the CDE receive funds from the federal government under IDEA.  To receive these funds, IDEA requires Hacienda La Puente, LACOE, the LAUSD, and the CDE to meet certain conditions, supervised by the CDE.  Similarly, the Sheriff's Department has entered into an agreement with Hacienda La Puente pursuant to which it acts as an LEA by supervising the provision of general education to inmates in its custody,

and it must therefore comply with IDEA.  Likewise, the County is an LEA charged with oversight of special education services within its boundaries and it must also comply with IDEA.  All Defendants therefore must meet statutorily prescribed conditions including, but not limited to:

a)      Identifying, locating, and evaluating children with disabilities residing in the State who are in need of special education and related services, regardless of the severity of their disabilities; 20 U.S.C. § 1412(a)(3);

b)      Providing notice of procedural safeguards to a parent at least one time during the school year, however, if a student is over eighteen years old, such notice shall be provided to both the parent and the student; 20 U.S.C. § 1415(d)(1)(A), 34 CFR § 300.504(a); Cal. Educ. Code § 56301(d)(2);

c)      Providing a FAPE to all people with disabilities who reside in the state and are between the ages of three and twenty-one, inclusive; 20 U.S.C. § 1412(a)(1);

d)      For each person with a disability, implementing an individualized education program, defined as a written statement for each child with a disability that is developed, reviewed, and revised in accordance with 20 U.S.C. § 1414(d), which IEP must include, but is not limited to including:

i)      a statement of the child's present levels of academic achievement and functional performance, 20 U.S.C. § 1414(d)(1)(A)(i),

ii)     a statement of measurable annual goals, including academic and functional goals; 20 U.S.C. § 1414(d)(1)(A)(ii),

iii)     a description of the measurement of the annual goals and the reporting of these goals; 20 U.S.C. § 1414(d)(1)(A)(iii),

iv)     for children over sixteen, annually update appropriate measurable postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills; 20 U.S.C. § 1414(d)(1)(A)(viii)(aa);

e)     Holding an IEP team meeting at least annually; 20 U.S.C. § 1414(d)(4)(A)(i);

f)     Implementing procedural safeguards for children with disabilities, consisting, at a minimum, of notice to parents or guardians of their procedural rights regarding the identification, evaluation, or education placement of a child or the provision of a FAPE to a child, and the right to present complaints and to an impartial due process hearing on such complaints; 20 U.S.C. §§ 1412(a)(6), 1415; and

g)     Establishing and maintaining standards consistent with state certification and licensing for teachers in special education and related services. *See generally* 20 U.S.C. § 1401(10).

144.   By failing to identify, evaluate, recommend, and then provide a FAPE, including IEPs, special education, and transition and related services to eligible students within the custody of the Sheriff's Department before their twenty-second birthday, and by failing to provide procedural safeguards specified in the statute and in the state plan implementing IDEA, Defendants Hacienda La Puente, LACOE, the LAUSD, the CDE, the County, and the Sheriff's Department have violated and continue to violate rights secured by 20 U.S.C. §§ 1400 *et seq.*,

and its implementing regulations at 34 C.F.R. §§ 300 *et seq.* (*See, e.g.* Ex. A at 16-17.)

145.   Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Further, as a direct result of Defendants' actions, Mr. Garcia and members of the Putative Class are suffering irreparable harm and lost education opportunities and therefore speedy and immediate relief is appropriate.

146.   Mr. Garcia is entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action under 20 U.S.C. § 1415(i)(3).

## SECOND CLAIM FOR RELIEF

### (Violation of the ADA Against All Defendants)

147.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

148.   At all times relevant to this action, each Defendant was a "public entity" within the meaning of Title II of the ADA and provided a program, service or activity to the general public.

149.   Title II of the ADA states, in pertinent part:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity.

42 U.S.C. § 12132.

150.   All Defendants have violated the rights of Plaintiff and the Putative Class secured by Title II of the ADA, 28 C.F.R. § 35, by *inter alia*:

a)      failing to make reasonable modifications and accommodations in their policies, practices, and procedures to enable

Mr. Garcia and the Putative Class to meaningfully participate in Defendants' education services, programs, and activities;

b) failing to furnish appropriate auxiliary aides and services to give Mr. Garcia and Putative Class an equal opportunity to participate in and enjoy the benefits of Defendants' education programs, services, and activities;

c) aiding and perpetuating discrimination against Mr. Garcia and member of the Putative Class in Defendants' education programs, services, and activities;

d) denying Mr. Garcia and members of the Putative Class the opportunity to effectively and meaningfully participate in and benefit from education services;

e) failing to provide equal access to education services to those inmates who have disabilities and are eligible for special education;

f) utilizing methods of administration that have the purpose and effect of defeating or substantially impairing accomplishments of the Plaintiff and members of the Putative Class in Defendants' programs;

g) and by otherwise failing to ensure that Plaintiff and members of the Class are not excluded from participation in or be denied the benefits of the services, programs, or activities of Defendants, or subjected to discrimination by Defendants.

151. By failing to provide and ensure the provision of appropriate special education, related services, reasonable modifications and accommodations to Mr. Garcia and members of the Putative Class, Defendants have denied such persons the benefits of the education services and programs provided by the State of California and the County.

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

152.   As a direct and proximate result of the aforementioned acts, Mr. Garcia and the Putative Class have suffered, and continue to suffer discrimination, lost education opportunity, and segregation in their education, based on their disabilities.

153.   Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Further, as a direct result of Defendants' actions, Mr. Garcia and the Putative Class are suffering irreparable harm and lost education opportunities and immediate relief is appropriate.

154.   Pursuant to 42 U.S.C. § 12133, Mr. Garcia is entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 12205.

## THIRD CLAIM FOR RELIEF

### (Violation of Section 504 of the Rehabilitation Act Against All Defendants)

155.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

156.   Section 504 provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."  29 U.S.C. § 794.

157.   By failing to provide reasonable accommodations to Mr. Garcia and members of the Putative Class and ensure the provision of a FAPE to eligible persons with disabilities detained in LACJ facilities, Defendants have discriminated and continue to discriminate solely by reason of Mr. Garcia's disabilities, in violation of Section 504 and the regulations promulgated thereunder including, but not limited to, 28 C.F.R. Part 41 and 45 C.F.R. Part 84.

158.   Because Defendants' discriminatory conduct is ongoing, declaratory relief and injunctive relief are appropriate remedies.

159.   Pursuant to 29 U.S.C. § 794a, Mr. Garcia is entitled to injunctive relief and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

## FOURTH CLAIM FOR RELIEF

### (Violation of the Due Process Clause Against

### the County, the Sheriff's Department, and the Administrative Defendants)

160.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

161.   The Fourteenth Amendment to the United States Constitution guarantees that no "State [shall] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1, cl. 3.

162.   Defendants County, Sheriff's Department, and Administrative Defendants have violated 42 U.S.C. § 1983 by denying Mr. Garcia and members of the Putative Class their rights secured by the Due Process Clause of the Fourteenth Amendment of the United States Constitution by, *inter alia,*

    a.    Refusing to provide special education and related services to all persons under twenty-two years of age who have been previously identified as eligible for special education and who are in the custody of the Sheriff's Department.

    b.    Without notice or the right to challenge this refusal of services, Defendants have deprived Mr. Garcia and the Putative Class of mandated education services—a state-created property right—without due process of law.

163.   In their official capacities, the Administrative Defendants actions and omissions constitute violations of federal law under IDEA, Section 504, and the

-41-

1  ADA because they deny eligible students the special education and related services

2  to which they are entitled.

### FIFTH CLAIM FOR RELIEF

### (Violation of the Equal Protection Clause Against County,

### the Sheriff's Department, and the Administrative Defendants)

6  164.  Plaintiff incorporates by reference each and every allegation contained

7  in the foregoing paragraphs as if specifically alleged herein.

8  165.  Defendants County, Sheriff's Department, and Administrative

9  Defendants have violated 42 U.S.C. § 1983 by denying Mr. Garcia and members of

10  the Putative Class their rights secured by the Equal Protection Clause of the

11  Fourteenth Amendment of the United States Constitution by, intentionally failing

12  to provide or to ensure the provision of special education and related services to

13  persons under twenty-two years of age who have previously been identified as

14  eligible for special education and who are in the custody of Sheriff's Department,

15  but providing general education services, Defendants have violated and continue to

16  violate Mr. Garcia's rights to equal protection under the law.

17  166.  Mr. Garcia is entitled to attorneys fees and other fees as required by

18  42 U.S.C. § 1988.

19  167.  In their official capacities, the Administrative Defendants' actions and

20  omissions constitute violations of federal law when they deny eligible students the

21  special education and related services to which they are entitled under IDEA,

22  Section 504 and the ADA, and when they deny eligible students reasonable

23  accommodations in their general education programs to which they are entitled

24  under Section 504 and the ADA.

## SIXTH CLAIM FOR RELIEF

## (Violation of the California Constitution Against the County

## and the Sheriff's Department)

168.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

169.   The California Constitution provides that the "Legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established." Cal. Const., art. IX, § 5.

170.   The California Constitution recognizes that education is a fundamental right. *See Serrano v. Priest*, 557 P.2d 929 (Cal. 1976).

171.   By failing to provide special education and related services to all students eligible for these services in Sheriff's Department custody before their twenty-second birthday, Defendants County and the Sheriff's Department are violating the California Constitution.

## SEVENTH CLAIM FOR RELIEF

## (Violation of California Government Code § 11135

## Against the County and the Sheriff's Department)

172.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

173.   California Government Code section 11135 sets forth a nondiscrimination policy for state programs. It provides that "no person in the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by

-43-

the state, or receives any financial assistance from the state." Cal. Gov't Code § 11135(a).

174.  California Government Code section 11135 further requires that the programs and activities that receive financial assistance from the state "shall meet the protections and prohibitions contained in Section 202 of the ADA. . . except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions." Cal. Gov't Code § 11135.

175.  The California Code of Regulations requires that "[t]he facility administrator of any Type II or III [Jail] facility shall plan and request of appropriate public officials an inmate education program. When such services are not made available by the appropriate public officials, then the facility administrator shall develop and implement an education program with available resources." Cal. Code Regs. tit. 15, § 1061; *see also* Cal. Penal Code § 6030.

176.  By failing to provide special education and related services to eligible students in Sheriff's Department custody before their twenty-second birthday, Defendants County and Sheriff's Department are violating California Education Code sections 56000, *et seq.*, California Government Code section 11135, and 15 C.C.R. § 1061.

## EIGHTH CLAIM FOR RELIEF

### (Violation of the California Education Code Against the County and the Sheriff's Department)

177.  Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

178.  The California State Legislature enacted the statutory framework governing the requirements of special education programs in California under Title 2, Division 4, Part 30 of the California Education Code. Cal. Educ. Code

§§ 56000, *et seq.* The California Legislature contemplated the provision of special education services outside of a traditional school-setting in finding that "special education provides a full continuum of program options, including instruction conducted in the classrooms, in the home, in hospitals and institutions, and in other settings." Cal. Educ. Code § 56000(c).

179.   California Education Code section 56026 provides that an individual with a disability may continue to receive special education services between the ages of nineteen and twenty-one, inclusive, if the student is enrolled in or eligible for a program before the person's nineteenth birthday, and has not yet graduated from high school or received a GED. Cal. Educ. Code § 56026(c)(4).

180.   California Education Code section 56040 mandates that "every individual with special needs who is eligible to receive special instruction and related services… receive that instruction and services at no cost:" Cal. Educ. Code § 56040(a). Section 56040 further requires that each individual with a disability, as defined by IDEA, receive a FAPE. *Id.*

181.   While California Education Code section 56040 does have an exception to the requirement that all eligible students receive FAPE, Mr. Garcia does not fall within that exception. Cal. Educ. Code § 56040(b). Section 56040(b) states that a student aged, 18 to 22 years is not entitled to a FAPE under IDEA when the student, in his education placement prior to incarceration, was not identified as being a child with a disability or did not have an IEP. *Id.*

182.   California Education Code section 56041 directs that "the last district of residence in effect prior to the pupil's attaining the age of majority shall become and remain as the responsible LEA, as long as and until the parent or parents relocate to a new district of residence." Cal. Educ. Code § 56041. This requirement is not changed by a student's detention in LACJ facilities. Cal. Educ. Code § 56040.

183.   The special education provisions found in sections 56000 *et seq.*, of the California Education Code do not abrogate or set a higher standard for the special education rights entitled to individuals with disabilities under IDEA.  Cal. Educ. Code § 56000(e).  Therefore any violation of IDEA is a violation of California Education Code sections 56000 *et seq.*

184.   The California Code of Regulations provides that "[t]he facility administrator of any Type II or III [Jail] facility shall plan and request of appropriate public officials an inmate education program. When such services are not made available by the appropriate public officials, then the facility administrator shall develop and implement an education program with available resources."  Cal. Code Regs. tit. 15, § 10.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.   Retain jurisdiction over this action including supplemental jurisdiction over Mr. Garcia's state law claims;

b.   Order that Mr. Garcia may maintain this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

c.   Order a speedy hearing for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure.

d.   Order and declare that the Defendants' conduct as alleged herein has violated, and continues to violate, IDEA, 20 U.S.C. §§ 1400 *et seq.*, and accompanying regulations, the ADA, 42 U.S.C. §§ 12101 *et seq.*, and accompanying regulations, Section 504, 29 U.S.C. § 794, and accompanying regulations, the Fourteenth Amendment to the United States Constitution, the California State Constitution, California Education Code section 56040, and California Government Code sections 11135, *et seq.*;

e.   Preliminary and permanently enjoin Defendants from violating IDEA, 20 U.S.C. §§ 1400 *et seq.*, and accompanying regulations, the ADA, 42 U.S.C.

§§ 12101 *et seq.*, and accompanying regulations, Section 504, 29 U.S.C. § 794, and accompanying regulations, the Fourteenth Amendment to the United States Constitution, the California State Constitution, California Education Code section 56040, and California Government Code sections 11135 *et seq.*;

f.      Order Defendants to adopt a system to provide a FAPE consistent with the requirements of IDEA and the California Education Code sections 56000 *et seq.*, and the regulations promulgated thereunder, to Mr. Garcia and members of the Putative Class;

g.      Order Defendants to adopt a mechanism to, upon a class member's admission to an LACJ facility, timely determine his or her eligibility to receive special education services;

h.      Order Defendants to adopt a process to determine what compensatory education services must be provided to Mr. Garcia and members of the Putative Class for the period of their incarceration at LACJ facilities during which they have not received the special education services to which they are entitled, and to provide such compensatory education services;

i.      Order the appointment of a special master to oversee the implementation of the above-listed systems, processes, and mechanisms and grant the special master legal authority to administer specific programs and activities of Defendants as may be necessary to ensure the provision of special education services to Mr. Garcia and members of the Putative Class;

j.      Retain jurisdiction of this case until Defendants have complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future, absent continuing jurisdiction;

k.      Award Mr. Garcia's attorneys' fees and costs, as provided by statute; and

//

//

1.   Any such other relief as the Court finds just and proper.

Dated:      December 4, 2009          Respectfully submitted,

By: _____

Linda Dakin-Grimm
ldakin@milbank.com
Daniel M. Perry
dperry@milbank.com
Delilah Vinzon
dvinzon@milbank.com
Hannah L. Cannom
Milbank, Tweed, Hadley & McCloy
LLP
601 S. Figueroa St., 30th Fl.
Los Angeles, California 90017
Telephone:  (213) 892-4000
Fax:   (213) 629-5063

*--and--*

Paula D. Pearlman
paula.pearlman@lls.edu
Shawna L. Parks
shawna.parks@lls.edu
Carly J. Munson
carly.munson@lls.edu
Andrea Oxman
Disability Rights Legal Center
919 Albany Street
Los Angeles, CA 90015
Telephone: (213) 736-8366
Facsimile: (213) 487-2106

***Attorneys for Plaintiff Michael Garcia***

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit A



State of California  •  Department of General Services  •  Arnold Schwarzenegger, Governor

## OFFICE OF ADMINISTRATIVE HEARINGS

**General Jurisdiction Division:**

| | | | | |
|---|---|---|---|---|
| Sacramento | 2349 Gateway Oaks, Suite 200 | Sacramento, | Ca 95833 | (916) 263-0550 | (916) 263-0554 fax |
| Los Angeles | 320 W. Fourth Street, 6th Floor, Suite 630 | Los Angeles, | Ca 90013 | (213) 576-7200 | (213) 576-7244 fax |
| Oakland | 1515 Clay Street, Suite 206 | Oakland, | Ca 94612 | (510) 622-2722 | (510) 622-2743 fax |
| San Diego | 1350 Front Street, Rm. 6022 | San Diego, | Ca 92101 | (619) 525-4475 | (619) 525-4419 fax |

**Special Education Division:**

| | | | | |
|---|---|---|---|---|
| Sacramento | 2349 Gateway Oaks, Suite 200 | Sacramento, | Ca 95833 | (916) 263-0880 | (916) 376-6319 fax |
| Van Nuys | 15350 Sherman Way, Suite 300 | Van Nuys, | Ca 91406 | (818) 904-2383 | (916) 376-6319 fax |
| Laguna Hills | 23046 Avenida De La Carlota, Suite 750 | Laguna Hills, | Ca 92653 | (949) 598-5850 | (916) 376-6319 fax |

## FAX TRANSMITTAL INFORMATION PAGE

**Date:** 11/16/09                    **Time:** 3:37 pm

**To:** Delilah Vinzon
**Fax number:** 1-213-892-4737

**From:** Ruiz, Rosie

**Subject:** Michael Garcia v. LAUSD OAH NO. 2009060442

**Number of pages:** 20

Please find the attached decision issued today in the above-referenced matter. This is a courtesy copy only and service will be effectuated by mail. Thank you.

Rosie Ruiz
Office of Administrative Hearings
2349 Gateway Oaks Drive, Suite 200
Sacramento, CA 95833
(916) 263-5791

**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

49

the communication

50

BEFORE THE
OFFICE OF ADMINISTRATIVE HEARINGS
STATE OF CALIFORNIA

In the Matter of:

STUDENT,                                    OAH CASE NO. 2009060442

v.

LOS ANGELES UNIFIED SCHOOL
DISTRICT.

## DECISION

Administrative Law Judge (ALJ) Susan Ruff, Office of Administrative Hearings (OAH), State of California, heard this matter in Los Angeles, California, on August 13 and September 10, 2009, and by way of a telephone conference call in Laguna Hills, California, on October 14, 2009.

Carly Munson, Attorney at Law, of Disability Rights Legal Center, and Hannah Cannom, Attorney at Law, of Milbank, Tweed, Hadley, and McCloy, appeared on behalf of Student (Student). Student appeared telephonically during part of the hearing and testified on his own behalf.

Barrett Green, Attorney at Law, and Daniel Gonzalez, Attorney at Law, of Littler Mendelson, appeared on behalf of the Los Angeles Unified School District (District).[1]

Student filed his due process request on June 5, 2009. On July 29, 2009, the parties requested and received a continuance of the hearing. At the close of the hearing, the parties requested and received time to file written closing argument. The matter was deemed submitted upon receipt of the written closing argument on October 28, 2009.[2]

---

[1] District representatives, assistants to the attorneys, and other individuals were also present for both sides at times during the case, but only the two lead attorneys for each side are listed above.

[2] Student's written closing argument has been marked as Exhibit S-36, and the District's written closing argument has been marked as Exhibit D-13.

51

ISSUES

1.     Did the District deny Student a free appropriate public education (FAPE), since June 19, 2008, by failing to offer or provide Student with special education services, including, but not limited to, instruction, transition services and all related services?

2.     Did the District deny Student a FAPE since June 19, 2008, by failing to comply with the procedural requirements of the Individuals with Disabilities Education Act (IDEA), the California Education Code, and applicable state and federal regulations by:[3]

        a.     Failing to notify Student of his procedural rights;

        b.     Failing to adopt or develop an individualized education program (IEP) for Student within 30 days of his transfer from the Barry J. Nidorf Juvenile Hall School to the Los Angeles County Jail on June 19, 2008;

        c.     Failing to hold an annual IEP team meeting to review Student's progress, evaluate his need for re-assessment, if any, and revise his educational program as needed; and

        d.     After Student made a written request for special education, failing to provide prior written notice explaining the reasons for refusing such services.

FACTUAL FINDINGS

1.     Student is a 19-year-old man who was previously found eligible for special education and related services under the eligibility categories of specific learning disability and speech and language impairment.  Student has an auditory processing disorder and is significantly behind his grade level in reading and math.  Student is currently incarcerated in the Los Angeles County Jail, awaiting trial.  He has not received any special education since he turned 18 years old.

2.     Student's mother has lived in Bell, California, within the jurisdiction of the District, since before Student was born.  Prior to Student's juvenile detention and adult incarceration, he lived with his mother.  The evidence is undisputed that, were Student to be released from incarceration, he would once again live with his mother in Bell, California.  Student's father lives in Los Angeles, but Student did not live with him prior to Student's incarceration, and his father has not been involved with Student's education.

3.     Student has received special education since approximately the second grade.  In the past, Student has attended school in the District and had IEPs developed by the

---

[3] Some of these issues have been revised and restated for purposes of clarity.

District.  For example, in February 2005, when Student was in the eighth grade, the District held an annual IEP for Student.

     4.    At some point in 2005, Student began attending the Soledad Enrichment Action Charter School (SEA Southgate).  SEA Southgate is a Los Angeles County Office of Education Charter School.  Student attended SEA Southgate and received special education services while he attended that school until he was arrested.

     5.    In February 2006, Student was arrested and detained in juvenile hall.  In April 2006, Student was educationally placed at the Barry J. Nidorf Juvenile Hall School.  He remained in juvenile detention until he was transferred to the adult jail on June 19, 2008.  He received special education while he was in the juvenile facility.

     6.    Student's most recent annual IEP team meeting was conducted on August 24, 2007, while Student was attending at the Barry J. Nidorf Juvenile Hall School.  At that time, the Los Angeles County Office of Education was the local educational agency (LEA) responsible for Student's education and conducted the meeting.  The IEP team found Student eligible for special education and related services under the eligibility categories of specific learning disability and speech and language impairment.  The IEP called for him to receive special education instruction in a special day class (SDC) for 240 minutes per day, speech and language therapy for 45 minutes weekly, counseling twice monthly for 15 minutes per session and behavior management twice weekly for 15 minutes per session.  The IEP also called for him to receive extended school year services.  The IEP provided that the special education and related services would continue for one year from the date of the IEP.  The IEP noted that Student's triennial assessment would be due in June 2009.

     7.    In discussing Student's need for special education, the IEP stated:

[Student] currently participates in the highly structured and small sized class where the regular education program is modified to meet the individualized needs for [Student] per academic assessment and ongoing classroom observation.  [Student] needs special education support to assist with academic weaknesses in support of the regular education program and to pass Proficiency Tests needed for graduation from high school.  This is the least restrictive environment for [Student] at this time.  Upon return to district of residence a new IEP will need to be held to determine the most appropriate educational placement within that setting.

     8.    Student had motivational problems regarding his education when he was at the juvenile facility.  His IEP noted that he frequently refused to attend school and turn in assignments.  His IEP contained a behavior support plan related to this problem.  In addition, Student missed school when the juvenile detention facility had a "lockdown" due to inmate disputes.  These lockdowns might last a day or as long as a week depending on what the disturbance had been. For example, if there was a race riot, it could lead to a very long lockdown.

9.     On May 5, 2008, an addendum to the August 24, 2007 IEP was agreed to and signed by the Los Angeles County Office of Education and Student's mother. The addendum IEP increased the amount of counseling Student received to 30 minutes per week and called for a functional analysis assessment (FAA) to be conducted with respect to Student's behavior. An FAA report was completed around May 25, 2008. The report noted two behaviors of concern – verbal/physical threats toward students and staff and that Student frequently got out of his seat to walk around the SDC classroom. According to the report, he was off-task in class and did not complete school work.

10.     On June 1, 2008, Student turned 18 years old. On June 19, 2008, he was transferred from the juvenile facility to the Los Angeles County Jail. Since his transfer to the jail no IEP team meetings have been held for Student and he has received no special education or related services. The District did not provide him with a notice of his procedural safeguards and did not provide him with a 30-day interim IEP after he was transferred to the adult jail facility. The District has not conducted any assessments of him since that time. No action has been taken with respect to the FAA completed in May 2008.

11.     Student has never received a high school diploma. Student wishes to receive a high school diploma to help him pursue vocational opportunities in the future. Student testified that he wishes to receive special education, and that he will participate in school lessons and complete school work if given the opportunity to do so at the jail. Student's mother believes that Student has matured since he went to the adult jail and now thinks more about his future.

12.     Student has attempted to keep his educational skills current during his time in the adult jail by reading books borrowed from other inmates or sent by his mother. His mother also sent him a dictionary to help with his reading. Both Student and his mother believe that his academic skills have regressed during the time he has been in the jail without special education.

13.     Student's expert Carlos Flores also believes that Student has regressed educationally. Flores is a neuropsychologist licensed in California. He has a private psychology practice and conducts assessments of children and adults. He has taught college level classes related to psychology in the past and currently supervises psychology doctoral students. He assessed Student and conducted tests in July 2009. Some of the test scores indicated that Student has lost ground educationally. Flores believes that Student's failure to receive any education for over a year contributed to that decline.

14.     Flores' assessment of Student took place in the attorney visitation booth in the jail. It was a private booth, although there was often noise from other inmates around them. Student was handcuffed to the desk. The assessment started at 10:00 a.m. and ended around 3:00 p.m. They took small breaks during the testing, but did not take a long lunch break. Flores believes that all the small breaks added up to approximately an hour.

15.     On February 12, 2009, Student's attorney sent a letter to the District requesting that Student be provided with special education and related services.

16.     On February 20, 2009, the District responded with a letter stating that it was "currently reviewing your request regarding this matter and will respond to you shortly." There was no further response by the District.

17.     The County of Los Angeles, Office of the Sheriff (Sheriff's Department), has contracted with Hacienda La Puente Unified School District to provide adult education to inmates in the county jails. The program includes basic elementary school subjects, required high school subjects and elective subjects leading to elementary school graduation and/or high school graduation. However, that contract does not include special education services for inmates.

18.     Student is currently classified as a K-10 inmate in the jail, which is a high security classification that requires Student to be kept away from the rest of the inmate population. Student spends most of his day in his cell. He is permitted visitation by his attorney and family. He is permitted to have books in his cell, but there are security restrictions on things such as the types of book binding. Student is permitted to have pencil and paper and is permitted to write letters.

19.     When Student's family visits, Student sees them in the visitor room. There is a glass window between them. His mother is permitted to stay and visit him from a half-hour to two hours, depending on whether the guards permit the longer stay. Student also has regular telephone conversations with his mother. These calls may last from ten minutes to two hours.

20.     The Sheriff's Department encourages education of inmates in the jail and will work with a school district to make education available to Student. Any education provided must be within the parameters of the jail's security concerns. For example, the Sheriff's Department would not permit Student to leave the jail facility to attend education elsewhere.

21.     During the hearing, neither party produced any evidence regarding the specific manner of providing special education that would be permitted by the Sheriff's Department for Student, given Student's K-10 classification. Lt. Ibelle, the only witness from the Sheriff's Department who testified at the hearing, did not know Student and was only familiar with Student's situation based on third party information. He did not state whether there would be restrictions on what would be permitted for Student, although he confirmed that his office would cooperate with the District's efforts to provide special education to Student as long as security was not compromised.

22.     In 2009, Student's counsel filed a compliance complaint with the California Department of Education (CDE). In June 2009, CDE issued a compliance complaint report finding, in part, the District failed to comply with the federal and state education laws by

failing to provide Student with special education. However, on July 15, 2009, CDE·set aside that compliance complaint decision in light of this pending due process case.

23.    Student's expert Flores believes that Student needs special education in order to gain educational benefit. He recommended that Student receive three 1-hour sessions a week of one-to-one math instruction, and two to three 1-hour sessions per week of one-to-one instruction in reading.[4] The phrase "one-to-one" refers to one educator working directly with Student rather than teaching other pupils at the same time as Student. Flores believes that the education should be provided using a "multi-sensory approach" and that the one-to-one sessions should be provided by a trained special educator.

24.    Flores believes that Student needs 90 minutes per week of speech and language therapy, provided in three 30-minute sessions per week. He admitted during his testimony that he is not an expert in speech and language pathology. He also recommended one hour per week of counseling for Student, given by a psychotherapist with experience working with pupils with auditory processing disorders or a cognitive behavior therapist.

25.    For compensatory education to remedy the time that Student did not receive educational services after he turned 18, Flores recommended an additional one-hour session of one-to-one special education in reading per week and another one-hour session in math per week, as well as an additional 30-minute speech and language session per week.

26.    Flores recommended additional accommodations for Student, including: 1) that Student be able to tape-record his educational sessions; 2) that Student receive and be required to complete homework; 3) that educational sessions for Student be held in a quiet environment; 4) that Student be given extra time for tests and time for breaks during his educational sessions; and 5) that the one-hour educational sessions not occur back-to-back. Student presented no evidence as to which, if any, of these accommodations could be provided in Student's current high-security environment. Flores did not testify regarding how these recommendations could be implemented in the jail.

27.    The District's expert Jose Gonzalez took issue with Flores' opinion that Student needed psychotherapy. Gonzalez is a neuropsychologist working as a due process specialist for the District. He has taught as a college professor and has numerous publications relating to neuropsychology and children with disabilities. He referred to Student's test results on the Beck Anxiety Inventory and the Beck Depression Inventory conducted by Flores. The test results were in the mild-moderate range in anxiety and in the mild range in depression. In Gonzalez' opinion, these test findings were to be expected for an incarcerated individual, and were not severe enough to demonstrate a need for weekly psychotherapy. In formulating his opinion, Gonzalez did not meet with Student or conduct any testing of Student. Instead, he relied solely on Flores' test results.

---

[4] During his testimony, Flores explained that the one-hour educational block could consist of a 50-minute to one-hour time block. For the sake of simplicity, this decision will use the phrase "one hour" to describe the 50-minute to one-hour time block discussed by Flores.

28.    The District also called Joe Salvemini as a witness to discuss the District's program to provide special education to pupils who are confined to their home or hospitals. However, he was unfamiliar with how services could be provided in a jail.

## LEGAL CONCLUSIONS

1.    Student, as the party requesting relief, has the burden of proof in this proceeding. (*Schaffer v. Weast* (2005) 546 U.S. 49 [126 S.Ct. 528].)

2.    Under the Individuals with Disabilities Education Act (IDEA) and corresponding state law, students with disabilities have the right to a FAPE. (20 U.S.C. § 1400 et seq.; Ed. Code, § 56000 et seq.)  FAPE means special education and related services that are available to the student at no cost to the parents, that meet the state educational standards, and that conform to the student's IEP. (20 U.S.C. § 1401(9); Cal. Code Regs., tit. 5, § 3001, subd. (p).)

3.    In California, eligibility for special education continues after age 18 for a pupil who is receiving or is eligible to receive special education before his or her 19th birthday and who has not completed his or her prescribed course of study, met proficiency standards or graduated from high school with a regular high school diploma. (Ed. Code, § 56026, subd. (c)(3), (4).) A "regular high school diploma" is defined as "a diploma conferred on a pupil who has met all local and state high school graduation requirements." (Ed. Code, § 56026.1, subd. (b).)

4.    When a pupil is a minor, his or her parents hold the educational rights for the pupil.  Once the pupil reaches the age of majority at 18 years of age, the educational rights transfer to the pupil. (Ed. Code, § 56041.5.)

*Student is Eligible to Receive Special Education During his Incarceration*

5.    Both federal and state education law provide that eligible pupils should continue to receive special education and related services while incarcerated in a juvenile or adult correctional facility. (20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. §§ 300.2(b)(1)(iv); 300.324(d) (2006); Ed. Code, § 56000, subd. (a).)  The only exception is for a pupil aged 18 through 21 who, in his or her educational program prior to incarceration, was not actually identified as being a child with a disability or did not have an IEP. (20 USC § 1412(a)(1)(B)(ii); Ed. Code, 56040, subd. (b).)

6.    The evidence supports a finding that Student is eligible to receive special education at the present time.  As set forth in Factual Findings 1 – 10, Student has been eligible for special education for many years.  He had an IEP finding him eligible for special education at the time he turned 18, and he has never received a high school diploma.  He now holds his own educational rights and, as discussed in Factual Finding 11, he wishes to pursue

his education and to receive special education. The exception set forth in Title 20 United States Code section 1412(a)(1)(B)(ii) and California Education Code section 56040, subdivision (b), does not apply to him because he had an IEP and was receiving special education and related services before his incarceration in the adult facility. As discussed in Factual Findings 6, 7, and 23, Student's most recent annual IEP found that he needed special education, and the most recent expert to assess Student (Flores) opined that Student still needs special education.

*The District is the LEA Responsible for Providing Student with Special Education*

7.      The main disputed legal issue in this case involves which LEA is responsible for providing a FAPE to Student while he is incarcerated in the Los Angeles County Jail. Student contends that the District is the responsible LEA and has denied Student a FAPE. The District denies that it is the responsible LEA.

8.      This legal issue has been addressed by OAH and the federal court in the past. In *Student v. Los Angeles County Sheriff's Department, et al.* (2009) OAH case number 2009010064, the same Student who filed the instant due process case filed a previous case against various state and local agencies contending that those agencies were responsible for providing Student with a FAPE while he was in the Los Angeles County Jail.[5]

9.      In that case, OAH first recognized the question of which agency is responsible for providing special education to an eligible adult who is incarcerated in an adult correctional facility is a matter of state law. (20 U.S.C. § 1412(A)(11)(c).) The decision then determined that, absent a specific statutory or regulatory section assigning responsibility to a particular agency for an incarcerated adult special education student, the general residency rules for determining the responsible agency would apply. The primary responsibility for providing special education in California rests on the LEA, and a pupil's school of residence is determined by the residency of the parent or guardian. (Ed. Code, § 48200; *Katz v. Los Gatos-Saratoga Joint Union High School District* (2004) 117 Cal.App.4th 47, 57.) California Education Code section 48200, California's compulsory education law, requires that a student between six and 18 years of age attend school in "the school district in which the residency of either the parent or legal guardian is located…." That district usually becomes the LEA responsible for providing a FAPE to an eligible student. (20 U.S.C. § 1401(19); 34 C.F.R. § 300.28(a) (2006); Ed. Code, § 56026.3.)

10.     With respect to pupils between 18 and 22 years, Education Code section 56041 provides, in pertinent part:

---

[5] Los Angeles Unified School District was not one of the parties to that case. Arguably the doctrine of collateral estoppel might apply to the legal findings made in that case. However, because the District was not a party to that case and had no opportunity to address the legal issues in that case, the District has been provided an opportunity to raise those legal issues herein. The decision in OAH case number 2009010064 is being considered and cited herein for its persuasive value, not as precedent or to collaterally estop consideration of these legal issues. (Cal. Code Regs., tit. 5, § 3085.)

Except for those pupils meeting residency requirements for school attendance specified in subdivision (a) of Section 48204, and notwithstanding any other provision of law, if it is determined by the individualized education program team that special education services are required beyond the pupil's 18th birthday, the district of residence responsible for providing special education and related services to pupils between the ages of 18 to 22 years, inclusive, shall be assigned, as follows:

(a) For nonconserved pupils, the last district of residence in effect prior to the pupil's attaining the age of majority shall become and remain as the responsible local educational agency, as long as and until the parent or parents relocate to a new district of residence. At that time, the new district of residence shall become the responsible local educational agency.

11.     The OAH decision rejected Student's argument that Education Code section 48204, subdivision (a)(3) provided an exception to that rule for Student. That provision provides an exception to Education Code section 56041 for a student whose parent or legal guardian is relieved of responsibility, control and authority through emancipation. The OAH decision differentiated a student who turns 18 years old from an "emancipated" child. As the decision recognized, any other construction of that provision would effectively repeal Education Code section 56041, subdivision (a), because any nonconserved adult would by definition come under the exception. (*Student v. Los Angeles County Sheriff's Department, et al., supra,* at pp. 4 – 6.)

12.     The OAH decision determined that the residence of the Student's parent was the key factor in determining which LEA was responsible for Student's education. Because none of the parties to that action met that residency factor, OAH dismissed that case. The United States District Court, Central District of California, in case number CV 09-1513-VBF(CTx) brought by Student against various entities, also found that Education Code section 56041 was the controlling California authority.

13.     As discussed in Factual Finding 2, Student's mother resided within the jurisdictional boundaries of the District at all times relevant to this matter and still resides within the jurisdiction of the District at the present time. Under Education Code section 56041, the District is the LEA responsible for Student's education while he is incarcerated in the Los Angeles County Jail.

14.     The District disputes that Education Code section 56041 is applicable to the instant case. The District relies on a 2003 decision from the Special Education Hearing Office (SEHO), OAH's predecessor in hearing California special education cases. In *Student v. Berkeley Unified School District and Albany Unified School District* (2003) SN-03-1989 (*Berkeley*), an adult pupil who held his own educational rights voluntarily moved into the jurisdiction of the Berkeley Unified School District. The pupil was not conserved and no guardian had been appointed for him. Berkeley argued that the school district in which the

residence of the pupil's parents was located should be responsible for his education under Education Code section 56041.

15.    The SEHO decision found that the adult pupil essentially became the "parent" for special education purposes once he turned 18 years old and received his educational rights. Therefore, when he chose to move into a new district, the district of his new residence was responsible for providing his education. The decision recognized that the purpose of Education Code section 56041 was to protect school districts with a large number of residential adult facilities from "becoming overwhelmed by the financial responsibility for the education of those adult students." Instead, the Legislature had intended to spread the responsibility for paying for the education of adult pupils in residential facilities upon the various districts where the parents of the pupils lived. The SEHO decision went on to hold that, because the pupil was not placed in a residential placement in Berkeley by a different school district, but instead chose to move to Berkeley on his own, the exception to the general residency rule contained in Education Code section 56041 did not apply. Berkeley was responsible for providing the pupil with special education.

16.    The District's reliance on that case is not well taken. Unlike the pupil in the *Berkeley* case, Student has not chosen to move into the Los Angeles County Jail. His residence of choice at all times in this matter has been his mother's residence in Bell, California, within the jurisdiction of the District. As discussed in Factual Finding 2, Student lived in Bell, California, at all times before his incarceration and would move back there if released from jail. Even if Student became the "parent" in the instant case when he turned 18, as the pupil did in the *Berkeley* case, jurisdiction for his special education still lies with the District.

17.    The rationale underlying the *Berkeley* case provides additional support for the finding that Education Code section 56041 is properly applied to the instant facts. Just as many school districts are responsible for assisting with the financial burden of a district with residential adult facilities to prevent the latter district from being overwhelmed by the expense, under Education Code section 56041, multiple school districts may be responsible for providing education to incarcerated adults to prevent the school district in which the prison resides from being overwhelmed by that responsibility. Absent a legislative statement to the contrary, both the explicit language of Education Code section 56041 and the legislative intent behind it support its application to the facts of this case.

18.    The District next argues that Education Code section 56041 should not apply because no LEA determined that Student should continue to receive education beyond age 18. This argument fails based on both the law and the facts. The District cites to no law indicating that section 56041 creates a "condition precedent" of some new finding of eligibility that an IEP team must make before that section applies. Instead, unless and until one of the factors occurs that makes a pupil ineligible for special education, California law mandates that special education shall continue. (Ed. Code, § 56026, subd. (c).) Unless a pupil reaches the maximum age limit (22 years of age) or graduates with a high school diploma, a district must reassess a pupil before exiting that pupil from special education.

(Ed. Code, § 56381, subds. (h), (i).)  As set forth in Factual Findings 1 – 3, 6 – 7, and 10 – 11, none of the factors excluding Student from special education exist here.

19.    Further, even if there was a "condition precedent" created by 56041, that condition has been met here.  As discussed in Factual Findings 6, 7 and 10, Student had an IEP in effect at the time he turned 18 years old.  That IEP was developed on August 24, 2007, when Student was 17 years old.  That IEP called for Student's special education and related services to remain in effect for one year, until August 24, 2008, after Student's 18th birthday.  The IEP also looked ahead to Student's next triennial assessment date in June 2009.  It was clear that the August 24, 2007 IEP team determined that Student needed special education after age 18.

20.    The District's interpretation of Education Code section 56041 would also violate public policy because it would permit a district to circumvent the procedural requirements of IDEA.  In the instant case, no findings of eligibility were made after Student's 18th birthday because no IEP meetings were held for him.  In effect, the District is arguing that, by failing to comply with its statutory duty to hold IEP meetings for Student, a school district can make a pupil ineligible for special education beyond his 18th birthday.  In its written closing argument, the District cites Student's reluctance to attend school while at the juvenile facility as a reason that an IEP team might have decided that Student was not eligible for special education after he turned 18 years old.  Perhaps that would have been a factor for the IEP team to consider had an IEP team meeting been properly held.  However, there was no such IEP team meeting and no findings made by an IEP team in this regard.  That is not a defense in the instant case.

21.    The District argues that the application of Education Code section 56041 would lead to "absurd" results because school districts might be responsible to provide special education to students who are incarcerated many miles away.  However, the situation is no different from a residential placement under section 56041, in which a district many miles away may be responsible for providing the education.  This "absurdity" argument was considered and rejected by the OAH decision in case number 2009010064 discussed above.

22.    The District also contends that a district would not be able to track a pupil who left the district and later ended up in jail.  For example, in the instant case as set forth in Factual Findings 3 – 5 above, Student attended SEA Southgate outside the jurisdiction of the District for a few months before his arrest.  The District contends that it would be a great burden for school districts to have to track every child who left the district to see if they ended up in jail.

23.    While that is a legitimate concern, it does not make Education Code section 56041 inapplicable here.  A school district has an obligation to seek out children with disabilities who may need special education within its jurisdiction.  (Ed. Code, §§ 56300,

56301.) It is the District's responsibility to make arrangements with the Sheriff's Department to notify the District about inmates who are eligible for special education.[6]

24.    The evidence supports a finding that the District was responsible for providing Student with a FAPE after he turned 18 and was incarcerated in the Los Angeles County Jail.

*The District Has Denied Student a FAPE Since June 19, 2008, by Failing to Offer or Provide Student With Any Special Education or Related Services.*

25.    The congressional mandate to provide a FAPE to a child includes both a procedural and a substantive component.  In *Board of Education of the Hendrick Hudson Central School District v. Rowley* (1982) 458 U.S. 176 [102 S.Ct. 3034], the United States Supreme Court utilized a two-prong test to determine if a school district had complied with the IDEA.  First, the district is required to comply with statutory procedures.  Second, a court will examine the child's IEP to determine if it was reasonably calculated to enable the student to receive educational benefit.  (*Id.* at pp. 206 – 207.)  If a school district's program was designed to address a student's unique educational needs, was reasonably calculated to provide him some educational benefit, and comported with his IEP, then the district provided a FAPE, even if the student's parents preferred another program and even if the parents' preferred program would have resulted in greater educational benefit.  (*Adams v. State of Oregon* (9th Cir. 1999) 195 F.3d 1141, 1149.)

26.    As discussed in Factual Findings 10 – 16 above, in the instant case, the District provided no special education or related services whatsoever to Student, even after the District received actual notice of Student's request for those services in February 2009.  Under those circumstances, there is no dispute that the District's program (or lack thereof) did not address Student's unique needs, did not comply with his IEP and was not reasonably calculated to provide him with educational benefit.  The District denied Student a FAPE.

27.    The District also denied Student a FAPE due to its failure to provide Student with related services, in particular speech and language services.  The term "related services" means transportation and "such developmental, corrective, and other supportive services (including speech-language pathology and audiology services…) as may be required to assist an individual with exceptional needs to benefit from special education…."  (Ed. Code, § 56363, sub. (a).)  A district is required to provide related services called for by the pupil's IEP.  As discussed in Factual Findings 6 – 7 and 10 – 11, Student's prior IEP called for him to receive speech and language therapy as a related service.  The District never provided that service to Student after he turned 18 years old.

---

[6] The CDE compliance complaint report indicated that the jail has made changes to its prisoner intake procedures to try to determine if incoming individuals are eligible for special education, so it can notify the applicable LEA.

28.     Student met his burden of proving that the District denied him a FAPE by failing to provide any special education or related services from and after June 19, 2008, when he was transferred to the adult jail facility.

*The District Denied Student a FAPE by Failing to Comply with the Procedural Requirements of IDEA and California Education Law.*

29.     The IDEA and California Education law provide numerous procedural requirements that a school district must follow in developing and implementing a special education program for a pupil.  Student contends that the District has violated four of these.  In particular, Student contends that the District: 1) failed to notify Student of his procedural rights; 2) failed to adopt or develop an IEP for Student within 30 days of his transfer from the Barry J. Nidorf Juvenile Hall School to the Los Angeles County Jail on June 19, 2008; 3) failed to hold an annual IEP team meeting to review Student's progress, evaluate his need for re-assessment, if any, and revise his educational program as needed; and 4) after Student made written requests for special education, failed to provide prior written notice explaining the reasons for refusing such services.  The evidence supports a finding that the District failed to comply with all four of these procedural requirements.

30.     An LEA must provide a notice of procedural safeguards to a parent at least one time during a school year.  (20 U.S.C. § 1415(d)(1)(A); 34 CFR § 300.504(a) (2006); Ed. Code, § 56301, subd. (d)(2).  Once the student turns 18 years old, the notice of procedural safeguards must be provided to both the student and the parent.  (Ed. Code, § 56041.5.)  As set forth in Factual Finding 10, the District never provided that notice of procedural safeguards to Student.

31.     Under IDEA and California special education law, an LEA is required to hold an IEP team meeting at least annually.  (20 U.S.C. § 1414(d)(4)(A)(i); Ed. Code, §§ 56043, subd. (d), 56343, subd. (d).)  As set forth in Factual Finding 10, the District failed to hold any annual IEP team meetings for Student after he transferred to the adult jail.

32.     If a pupil moves from one school district to another during the school year, the new district must provide the services from the student's existing IEP for a period not to exceed 30 days, "by which time the [district] shall adopt the previously approved [IEP] or shall develop, adopt, and implement a new [IEP] that is consistent with federal and state law...."  (Ed. Code, § 56043, subd. (m).)  As set forth in Factual Finding 10, the District never implemented the existing IEP services or held a meeting to adopt the existing IEP or draft a new one.

33.     An LEA is required to provide written notice to a pupil whenever the LEA refuses to initiate or change the identification, assessment or educational placement of the pupil.  (Ed. Code, § 56500.4, subd. (a).)  The law specifies in detail the information which must be contained in that notice.  (Ed. Code, § 56500.4, subd. (b).)  As set forth in Factual Findings 15 – 16, the District failed to provide the prior written notice of its denial of services after Student made his request in February 2009.  The District's letter stating that the

District would investigate and get back to the Student was by no means the detailed prior written notice required by the code.

34.     Not every procedural violation of IDEA results in a substantive denial of FAPE. (*W.G. v. Board of Trustees of Target Range School District* (9th Cir. 1992) 960 F.2d 1479, 1484.) According to Education Code section 56505, subdivision (f)(2), a procedural violation may result in a substantive denial of FAPE only if it:

(A)     Impeded the child's right to a free appropriate public education;

(B)     Significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education to the parents' child; or

(C)     Caused a deprivation of educational benefits.

35.     The evidence supports a finding that each of these four procedural violations resulted in a substantive denial of FAPE. The failure to provide Student with his notice of procedural rights impeded his opportunity to participate in the decision making process regarding his education. He did not even know he was entitled to special education in the jail. The failure to hold an interim IEP meeting and an annual IEP meeting caused a deprivation of educational benefits because Student received no special education whatsoever and his skills began to regress. The failure to provide prior written notice regarding the District's refusal to provide Student with special education left him uncertain regarding whether he would receive education from the District, thereby impeding his right to a FAPE.

36.     Student met his burden of proving that the District committed procedural violations of IDEA and that those violations resulted in a substantive denial of FAPE.

*Student is Entitled to One-to-One Educational Instruction and Compensatory Education as a Result of the District's Denial of FAPE.*

37.     The final question is the appropriate remedy for the denial of FAPE. When a district fails to provide a pupil with a FAPE, compensatory education may be awarded as a remedy. Compensatory education is an equitable remedy designed to "ensure that the student is appropriately educated within the meaning of the IDEA." (*Parents of Student W v. Puyallup School District, No. 3* (9th Cir. 1994) 31 F.3d 1489, 1497.) There is no obligation to provide a day-for-day compensation for time missed. The remedy of compensatory education depends on a "fact-specific analysis" of the individual circumstances of the case. (*Ibid.*) The court is given broad discretion in fashioning a remedy, as long as the relief is appropriate in light of the purpose of special education law. (*School Committee of the Town*

*of Burlington, Massachusetts v. Department of Education* (1985) 471 U.S. 359, 369 [105 S.Ct. 1996].) [7]

38.     The District contends that one hour a week of "educational support" would be sufficient to meet Student's needs and that Student should be educated in a "home study" situation. The District's proposal is not reasonable given Student's very severe needs and his lack of any special education services for over a year.

39.     Student contends that Flores' recommendations for services would be appropriate for Student's education and compensatory education. As discussed in Factual Findings 23 – 28 above, Flores recommended 3 one-to-one sessions of reading and math per week, three sessions of speech and language per week, and one session of psychotherapy per week.

40.     Flores' opinion regarding the reading and math services is persuasive. Flores conducted the most recent assessment of Student and is familiar with his needs. Flores' recommendation for one-to-one instruction is reasonable given Student's unique needs and circumstances in the high-security jail. The evidence established that Student is allowed to receive visitors, and is allowed to have some types of books, pencils and papers. Given the depth of Student's needs, the one-to-one sessions must be provided by a credentialed special education teacher. If the District does not have such a teacher available, it will be responsible for contracting with another agency or a nonpublic agency to provide one.

41.     Flores' opinion that Student needs an additional one-hour session per week of one-to-one instruction in reading and math as compensatory education is also persuasive. Student has lost an entire year of education. He needs this intense extra instruction to help him recover some of the educational time he has lost.

---

[7] During the hearing, the ALJ requested that both parties provide guidance through evidence and argument on what special education services could be provided to Student given Student's high-security environment. In Student's written closing argument, Student complained that this request placed an extra burden of proof on Student, beyond the burden normally held by a petitioner. Student is mistaken. A pupil who seeks compensatory education or other remedies is required to provide evidence to support the type and amount of any education requested, given the pupil's unique circumstances. In the instant case, Student's unique needs and circumstances include his incarceration. Any education provided to Student must, by necessity, take into account the need for his own safety and the safety of others in his current environment. For example, the least restrictive environment appropriate for Student must, due to his current circumstances, be the jail facility where he is incarcerated. (See, 34 C.F.R. § 300.324(d)(2).)

The ALJ's request for guidance was directed to *both* parties, not just Student, and was intended to provide the basis for a detailed order which the District could follow. A specific order of that type would provide Student with the immediate educational services he requires, and hopefully prevent any delay of those necessary services due to a dispute over the manner of providing services. However, because neither party chose to introduce evidence regarding what is logistically permissible in Student's current environment, this Decision will make a more general order for educational services and compensatory education. It will be the District's responsibility to work with the Sheriff's Department and other correctional agencies to determine how best to implement that order to meet Student's unique educational needs until a new IEP team meeting is held and a new IEP agreed upon by the parties.

42.  Flores' opinion regarding the speech and language services is more troubling, because he admitted during his testimony that he is not a speech and language expert.  His recommendation for three 30-minute speech and language sessions per week is twice as much as the 45 minutes per week called for in the last agreed-upon IEP for Student.  However, the District presented no expert testimony to counter Flores' opinion in this regard, and Flores' opinion is persuasive that, after losing a year of speech services, Student requires more than he previously received.  Flores' opinion that an additional 30-minute session per week of speech and language services is necessary to compensate Student for the year's work of lost services is also reasonable and persuasive.

43.  As stated in Factual Findings 24 – 27 above, the parties dispute whether Student requires 60 minutes of counseling per week in order to gain benefit from his special education.  Although Gonzalez is a highly qualified and credible expert, Flores' testimony is more persuasive in this case.  Flores actually met with Student and assessed him, while Gonzalez based his opinion solely on test results written on paper.  The last IEP team to consider Student's unique needs believed that counseling services were required.  Although Flores' recommended more counseling than the amount called for in the May 5, 2008 addendum to Student's IEP, Student's circumstances have changed.

44.  However, the evidence does not support a finding that only a counselor who has experience working with pupils with auditory processing disorders or a cognitive behavior therapist should provide the counseling services.  Student presented no evidence that such an individual exists who would be available and willing to provide counseling in a jail.  Instead, the services should be provided by a mental health professional duly licensed to provide services in the State of California.

45.  Finally, Student requests that the other accommodations recommended by Flores, discussed in Factual Finding 26, be ordered.  However, aside from the one-to-one instruction, it would not be appropriate to order the remaining recommendations.  Flores did not testify regarding which of those accommodations could be provided to Student in jail.  The District will already have to work with the Sheriff's Department to determine the appropriate manner to provide the services to meet Student's unique needs.  It would not be appropriate to lock the District into an accommodation that may not be available or safe in the jail setting.  If Student believes that further accommodations are necessary, Student can request an IEP team meeting to discuss them.  That will enable both parties to explore what can and cannot be safely provided to Student in his current high-security environment.


ORDER

1.  Student's request for relief is granted.

2.  The Los Angeles Unified School District is the entity legally responsible for providing Student with a free appropriate public education while he is incarcerated in the Los Angeles County Jail.

3.      Within 60 days of the date of this Decision, the District shall begin providing special education to Student as follows:

a.      Three 1-hour sessions per week of one-to-one instruction in reading provided by a credentialed special education teacher.

b.      Three 1-hour sessions per week of one-to-one instruction in math provided by a credentialed special education teacher.

c.      Speech-language therapy provided one-to-one by a licensed speech-language pathologist for 90 minutes per week, divided into three 30-minute sessions.

d.      One-to-one counseling for one hour per week provided by a California licensed mental health professional, such as a psychologist, psychiatrist, or social worker, or a credentialed school psychologist.

e.      The special education and related services described above will continue until Student is no longer eligible for special education, is transferred out of the Los Angeles County Jail, or a new IEP is signed or ordered as a result of a due process hearing.

4.      In addition to the weekly services discussed above, the District shall provide Student with the following special education and related services as compensatory education:

a.      One hour per week of one-to-one special education instruction in math provided by a credentialed special education teacher.

b.      One hour per week of one-to-one special education instruction in reading provided by a credentialed special education teacher; and

c.      30 minutes per week of speech and language therapy provided by a licensed speech-language pathologist.

d.      The compensatory education services shall begin within 60 days from the date of this Decision and shall continue for one year after the starting date of those services.


PREVAILING PARTY

Pursuant to Education Code section 56507, subdivision (d), the hearing decision must indicate the extent to which each party has prevailed on each issue heard and decided.  Here, Student prevailed on all issues heard and decided in this case.


17

RIGHT TO APPEAL THIS DECISION

The parties to this case have the right to appeal this Decision to a court of competent jurisdiction.  If an appeal is made, it must be made within 90 days of receipt of this Decision in accordance with Education Code section 56505, subdivision (k).

Dated: November 16, 2009

/s/

_____

SUSAN RUFF
Administrative Law Judge
Office of Administrative Hearings

18

Exhibit B

# AGREEMENT # 64794

## COUNTY OF LOS ANGELES
## SHERIFF'S DEPARTMENT

## AND

## HACIENDA/LA PUENTE

## SCHOOL DISTRICT

# *FUNDED BY*
# *INMATE  WELFARE FUND*

69

LASD000437

*recd 6/16/91 JK*



*General Fund*

# County of Los Angeles
## Office of the Sheriff
## Hall of Justice
## Los Angeles, California 90012

SHERMAN BLOCK, SHERIFF

May 17, 1991

Dr. James E. Johnson, Superintendent
Hacienda La Puente Unified School District
15959 East Gale Avenue
La Puente, California  91749

Dear Dr. Johnson:

### AGREEMENT FOR EDUCATIONAL SERVICES
### BETWEEN THE HACIENDA LA PUENTE UNIFIED
### SCHOOL DISTRICT AND THE LOS ANGELES
### COUNTY SHERIFF'S DEPARTMENT

Enclosed are the two new agreements, each accompanied by the Fiscal Year 1991-92 Annual Joint Operating Plan, covering educational services to be provided by the Hacienda La Puente Unified School District for Los Angeles County Jail inmates beginning July 1, 1991.  The agreements and the Fiscal Year 1991-92 plans were approved by the County's Board of Supervisors on April 30, 1991.  As provided in the prior agreements, no expiration dates have been established, however, the operational plans must be updated yearly.

Agreement Number 64792 is funded by the Sheriff's Department through its operating budget and requires that the Sheriff's Department pay $452,751, semi-annually, by June 15, 1991 and December 15, 1991, or within ten days of receipt of your invoices.  Any overpayment or underpayment will be reported by the District to the Sheriff on August 1, 1992.

Agreement Number 64794 is funded by the Inmate Welfare Fund and requires the Sheriff's Department to pay $1,500,540, semi-annually, by June 15, 1991 and December 15, 1991, or within ten days of receipt of your invoices.  Any overpayment or underpayment will be reported by the District to the Sheriff on August 1, 1992.

$452,751 — 1st payment   12/6/92   CH603070002
$250,000 — 2nd payment   6/16/92   CH603070003
202,751   3d payment due
452,751

**70**

Dr. James E. Johnson                    -2-                    May 17, 1991

If you have any questions or require any additional information, please call me at 974-4701.

Sincerely,

SHERMAN BLOCK, SHERIFF

ORIGINAL SIGNED BY

Fred M. Ramirez, Director
Fiscal Services

FMR:DJ:rt

cc:  Roy A. Fisher, Fiscal Services
     Patricia Hawkins, Fiscal Services
     Dorothy Joseph, Fiscal Services
     Roberto Papa, Fiscal Services
     Jaime Ocampo, Fiscal Services ✓
     Fiscal Services File
     Hacienda/La Puente School District File
     Agreement File
     Chrono File
     (DrJohn)

71

LASD000439

64794





## County of Los Angeles
### Office of the Sheriff
### Hall of Justice
### Los Angeles, California 90012

SHERMAN BLOCK, SHERIFF

EXECUTIVE SUMMARY

AGREEMENT WITH HACIENDA LA PUENTE
UNIFIED SCHOOL DISTRICT TO PROVIDE
ADULT EDUCATION IN LOS ANGELES COUNTY
SHERIFF'S FACILITIES FUNDED BY THE
INMATE WELFARE FUND (3 VOTES)

REQUEST
- Authorize the Sheriff to Execute an Agreement with Hacienda La Puente Unified School District to provide Adult Education in Los Angeles County Sheriff's Facilities.

- Direct the Chairman of the Board of Supervisors to sign the attached agreement between the County of Los Angeles and Hacienda La Puente Unified School District.

FISCAL IMPACT
- No Fiscal Impact, costs are offset by Inmate Welfare Funds.

- It is estimated that total expenditures for fiscal year 1991-92 shall not exceed $3,001,080.

ISSUES
- Under this agreement, prior to June 30 of each year representatives of the Sheriff and School District shall meet and prepare an Annual Joint Operating Plan, specifying classes to be provided and cost for these services.

- Upon execution, a copy of the Annual Joint Operating Plan shall be delivered to the Clerk of the Board of Supervisors to be affixed to the original agreement.

SYN# 42    OF APR 3 0 1991

f000

LASD000440



**County of Los Angeles**

**Office of the Sheriff**

**Hall of Justice**

**Los Angeles, California 90012**



SHERMAN BLOCK, SHERIFF

April 9, 1991

Honorable Board of Supervisors
County of Los Angeles
383 Hall of Administration
Los Angeles, California 90012-3265

Dear Supervisors:

AGREEMENT WITH HACIENDA LA PUENTE UNIFIED SCHOOL
DISTRICT TO PROVIDE ADULT EDUCATION IN LOS ANGELES
COUNTY SHERIFF'S FACILITIES FUNDED BY THE INMATE
WELFARE FUND

In 1973 Los Angeles County entered into an agreement with
Hacienda La Puente Unified School District to establish,
supervise and maintain classes for Adult Education and to
provide testing, guidance and educational - vocational
counselling services to inmates in Los Angeles County
Sheriff's Facilities.

Hacienda La Puente Unified School District through its
Correction Education Division now provides an educational
program defined as, Basic Elementary School subjects,
required high school subjects, and elective subjects
leading to elementary school graduation and/or high school
graduation. Subjects include English, English as a second
language, reading, writing, penmanship, spelling, geography,
U.S. Constitution, arithmetic, general mathematics, algebra,
geometry, first aid and other academic and vocational subjects.

Based upon the recommendations of our Fiscal Staff, this
agreement has been updated to reflect the changes in the
method of payment for those services provided by Hacienda
La Puente Unified School District.

SYN# 42    OF APR 3 0 1991

1001

73

LASD000441

Board of Supervisors          -2-          April 9, 1991

THEREFORE, IT IS RECOMMENDED THAT YOUR BOARD:

1. Authorize the Sheriff to execute an agreement with Hacienda La Puente Unified School District to provide Adult Education in Los Angeles County Sheriff's Facilities.

2. Direct the Chairman of the Board of Supervisors to sign the attached agreement between the County of Los Angeles and Hacienda La Puente Unified School District.

Sincerely,

SHERMAN BLOCK
SHERIFF

SYN# 42     OF APR 3 0 1991

74

LASD000442

COUNTY OF LOS ANGELES

STATE OF CALIFORNIA

AGREEMENT FOR ADULT EDUCATION IN LOS ANGELES

COUNTY SHERIFF'S FACILITIES

THIS AGREEMENT, made and entered into this 30th day of April, 1991
between the County of Los Angeles, hereinafter COUNTY or SHERIFF,
and the Hacienda La Puente Unified School District, hereinafter
referred to as the DISTRICT:

W I T N E S S E T H

WHEREAS, Section 4018.5 of the Penal Code authorizes the SHERIFF,
subject to the approval of the Board of Supervisors, to provide for
the vocational training and rehabilitation of prisoners confined in
the County Jails; and the SHERIFF is further authorized by Section
4025 of the Penal Code to expend moneys from the Inmate Welfare Fund
for the benefit, education, and welfare of inmates confined within
the jail; and

WHEREAS, the DISTRICT is authorized by various provisions of law,
including Sections 35160, 41841.5, 46191, and 51810 of the Edu-
cation Code, to establish and maintain classes for adults in County
Jails; and

WHEREAS, the SHERIFF and the DISTRICT mutually desire to provide for
classes of instruction as part of the program for rehabilitation of
prisoners confined in the County Jails, within the limitations of
the joint authority of the sheriff and the DISTRICT to do so, and

WHEREAS, the DISTRICT recognizes that the custodial care of the
inmates and the work program (productiveness) of the Sybil Brand
Institute for Women, Central Jail, Peter J. Pitchess Honor Rancho
(et al), Mira Loma (Male and Female), Biscailuz Center, Hall of

64794

1003

75

LASD000443

Justice or other SHERIFF'S custody facilities as are mutually agreed upon by the DISTRICT and the SHERIFF, hereinafter collectively referred to as the SHERIFF'S FACILITIES, are of prime importance to rehabilitation and that education must be complementary and supplementary to these fundamental responsibilities.

NOW, THEREFORE, the parties hereto mutually agree as follows:

1. Term of Agreement.  The term of this Agreement shall be from the date of execution until terminated by mutual agreement, upon 30 days written notice from either party to the other.

2. Work Statement.  The DISTRICT agrees to establish, supervise and maintain classes for adult education as described in the Annual Joint Operating Plan and to provide testing, guidance, and educational-vocational counseling services at the SHERIFF'S FACILITIES.

The educational program is hereby defined as basic elementary school subjects, required high school subjects, and elective subjects leading to elementary school graduation and/or high school graduation.  They, in general, will be such subjects as English, reading, writing, penmanship, spelling, geography, U. S. Constitution, arithmetic, general mathematics, algebra, geometry, first aid, and other academic or vocational subjects mutually agreed upon by the DISTRICT and the SHERIFF.  Beginning, intermediate, and advanced classes shall be defined so that learning is continuous and upgraded, not repetitious or deuplicated credit process.

3. Payment.  The SHERIFF shall reimburse the DISTRICT for the cost of all services, articles, and supplies furnished pursuant to the terms of this Agreement, including all services, articles and

- 2 -

supplies referred to in subparagraphs (a) and (b) hereof, in accordance with the annual DISTRICT budget, but in no event to exceed the amounts appropriated by the Los Angeles County Board of Supervisors for such purposes together with such amounts in his budget for such purposes. This includes an amount to be determined by the DISTRICT of up to eight percent of the costs of services, supplies and articles set forth in subparagraphs (a) and (b) below, for the cost of supervising overall operations of the program, for the processing of classes to be approved, for the making of the State and County attendance reports of original class records, and for all other duties which may grow out of the development of the organization, including the clerical duties involved.

8%

(a) The amount to be paid by the DISTRICT as salaries or wages of all persons employed by the DISTRICT for services to the SHERIFF'S FACILITIES and the fixed charges thereof.

(b) The amount paid by the DISTRICT for all services not included in subparagraph (a) above and for all supplies (including paper and tests), articles (including books), and equipment which were acquired by the DISTRICT exclusively for use at the SHERIFF'S FACILITIES. Any supplies and articles paid for by the SHERIFF'S DEPARTMENT shall become the property of the SHERIFF.

(c) Any Los Angeles SHERIFF'S DEPARTMENT approved equipment purchased by the DISTRICT for the implementation of this program shall be billed to the SHERIFF by the DISTRICT separate from the provisions of subparagraphs (a) and (b) above and thereafter becomes the property of the SHERIFF'S DEPARTMENT Educational Program.

(d) The DISTRICT shall bill the SHERIFF for any costs not reimbursed by the state apportionments under the provisions of this

- 3 -

LASD000445

Agreement.  The DISTRICT shall submit invoices in triplicate twice annually to the Fiscal Services Bureau, SHERIFF'S DEPARTMENT.  The first invoice is due June 1, 1991, and the second invoice is due December 1, 1991.  The SHERIFF shall make payments June 15, 1991, and December 15, 1991 respectively, or within ten (10) days of receipt of the invoice.

   (e)  Any overpayment or underpayment will be reported to the Sheriff's Fiscal Services Bureau by the DISTRICT on August 1, 1992. Any overpayment will be reimbursed to the SHERIFF on or before August 10, 1992.  In the event of an underpayment, the DISTRICT shall submit an invoice in triplicate to Fiscal Services Bureau, SHERIFF'S DEPARTMENT, reflecting the underpayment.  Any underpayment will be paid to the DISTRICT on or before August 10, 1992.

   4.  Annual Joint Operating Plan.

   (a)  Prior to June 30 of each year after the date of execution of this Agreement, or at such other time that the parties agree to in writing, representatives of the SHERIFF and DISTRICT shall meet and confer to prepare the ANNUAL Joint Operating Plan. The Joint Operating Plan shall specify the classes to be provided for the next fiscal year, including their specifications and locations.  The Joint Operating Plan shall provide provisions for billing and payment including deadlines for submission of invoices by the DISTRICT and payment by the SHERIFF.
Each such Annual Joint Operating Plan, when signed by the SHERIFF and the Superintendent of the DISTRICT, and approved as to form by the County Counsel, shall become a part of this Agreement and replace the preceding year's plan.  Upon execution by all such persons, a copy of each Annual Joint Operating Plan shall be promptly delivered to the Clerk of the Board of Supervisors of the

- 4 -

78 100

LASD000446

County of Los Angeles to be affixed to the original Agreement.  By mutual agreement of the SHERIFF and the DISTRICT, the parties may amend an Annual Academic Joint Operating Plan.

(b)  The Annual Joint Operating Plan shall be supplemented by class schedules agreed to by the SHERIFF'S DEPARTMENT, Inmate Services Bureau Commander, and School Supervisor, which shall specify the dates upon which the classes are to be initiated and maintained, the number of classes, written objectives, content of courses, and general descriptions of methods to be used to obtain the objectives.  Said schedules are subject to the approval of the Division of Continuing Education as prescribed in the Educational Code, and subject to the approval of the State Board of Education granted in accordance with such regulations as it may hereafter adopt, and subject to the policies, rules and regulations of the DISTRICT.  Such class schedules shall be kept on file at the SHERIFF'S FACILITIES BY THE DISTRICT and reported to the California Department of Education.

5.  Transcripts and Certificates.  The DISTRICT shall assume responsibility for requesting "transcripts of records" from other schools and for the verification and evaluation of records and credits or units toward graduation.  The DISTRICT may use standardized achievement tests and other means of evaluation as are recognized by the California State Department of Education and the DISTRICT in awarding graduation certificates.

The DISTRICT shall award certificates or diplomas of graduation (either the eighth grade or the high school diplomas) to all inmates who earn such certificates or diplomas, and said certificates or diplomas shall be presented to the inmates by the DISTRICT.

- 5 -

LASD000447

6. <u>Attendance Reports.</u>  Careful attendance reports shall be kept by DISTRICT personnel in accordance with State and County rules and regulations, and both monthly and annual summary reports shall be reported to all agencies requesting such reports.

7. <u>Accounting for Funds.</u>  A strict accounting of all funds shall be made in accordance with the adopted budget of the DISTRICT. This accounting shall be subject to an annual audit by the appropriate agency authorized by the DISTRICT.

8. <u>State Apportionment Records.</u>  The DISTRICT shall include all persons attending Adult Education Classes pursuant to this Agreement in its reports to the State Department of Education of adult average daily attendance for the DISTRICT and shall apply for State apportionments on account of such average daily attendance.

9. <u>Employment Conditions and Rules.</u>  The classes and employment conditions shall be maintained in accordance with the usual standards for other classes maintained by the DISTRICT and such standards and personnel procedures as may be specifically determined upon by mutual agreement of the parties to meet the particular conditions existing at each of the SHERIFF'S FACILITIES.

All personnel working for the DISTRICT under this Agreement shall abide by the "SHERIFF'S DEPARTMENT Manual of Policy and Ethics", "Standard Operating Procedures" of the particular SHERIFF'S FACILI-TIES, as they may be amended from time to time, which publications define the rules and regulations relative to the conditions under which all personnel are employed at the SHERIFF'S FACILITIES.

All persons employed by the DISTRICT to perform services under this program shall be paid in accordance with the policies, rules and regulations of the DISTRICT applicable to such employment.

SYN# 42    OF APR 3 0 1991

80  1008

LASD000448

10. Responsibility for Hiring of Personnel.  The DISTRICT shall have the final responsibility for screening, selection and employment of all personnel employed under the terms of this Agreement and shall assign the hours and define the responsibilities of such personnel subject to the restrictions stated in Paragraph 9 hereof.  It is agreed that the SHERIFF or his authorized representative shall have the right to withhold acceptance of a candidate being screened or re-employed in which case the candidate will not be selected to serve under the terms of this Agreement. The DISTRICT will assign its personnel employed pursuant to this Agreement to meet the needs of the SHERIFF'S FACILITIES.

11. Inspection of Classes and Records.  The Board of Education of the DISTRICT and their authorized representatives, subject to the rules mentioned in Paragraph 9 hereof, shall have the privilege of visiting classes, supervising the personnel, and observing the result of the program for the purpose of control and evaluation of the personnel and the program furnished.  The auditor of the DISTRICT accounts shall, subject to the rules mentioned in Paragraph 1 hereof, have access to all records at the SHERIFF'S FACILITIES pertaining to attendance upon classes, time cards, and payroll records of persons employed in connection with this program and all financial records pertaining to the program.

12. Independent Contractor.  Both parties hereto in the performance of this Agreement will be acting in an independent capacity and not as agents or employees of one another.  The employees or agents of one party shall not be deemed or construed to be the agents or employees of the other party for any purpose whatsoever.

SYN# 42    OF APR 3 0 1991

81  1009

LASD000449

13. Workers' Compensation. Contractor shall provide and maintain workers' compensation insurance for all agents and employees of Contractor who perform any service under this Agreement.

14. Assignment. This Agreement, or any provision thereof, or any right or obligation arising hereunder is not assignable in whole or in part without the express written agreement of the other party.

15. Liability.

(a) The SHERIFF agrees to hold harmless the DISTRICT, its Board of Education, officers, employees and agents from every claim or demand which may be made by reason of any injury to person or property sustained by reason of any dangerous or defective conditions of the property at the SHERIFF'S FACILITIES, other than supplies furnished by the DISTRICT, SHERIFF or any officer, employees or agent thereof.

(b) The DISTRICT agrees to hold harmless the SHERIFF, his officers, employees, and agents from every claim or demand which may be made by reason of the dangerous or defective condition of any property furnished by the DISTRICT in connection with the performance of this Agreement or by reason of any fault of the DISTRICT or any officer, employees or agent thereof.

16. Debt Limitation. Pursuant to the provisions of Article 16, Section 18 of the California Constitution, the County shall not be obligated to make payments for, and shall not incur any indebtedness or liability hereunder in any fiscal year, unless and until, and only to the extent that County's Board of Supervisors has budgeted an appropriate amount of funds therefore.

17. Contract Administrator. This contract shall be administered for the COUNTY and the SHERIFF by the Unit Commander, Inmate Welfare Services Bureau.

- 8 -

LASD000450

18. _Agreement._  This writing together with the current Joint

Operating Plan and any amendments thereto, constitutes the entire

agreement between the parties.  This agreement may not be altered or

modified except by the written agreement of both the _SHERIFF_ and the

_DISTRICT._



County of Los Angeles

By _____

Chairman, Board of Supervisors

Executive Officer-Clerk of
the Board of Supervisors

By _Lurma C. Walton_ _____

Deputy

ADOPTED
BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES

4 2                    APR 30 1991



LARRY J. MONTEITH
EXECUTIVE OFFICER

I hereby certify that pursuant to
Section 25103 of the Government Code,
delivery of this instrument has been made.
LARRY J. MONTEITH
Executive Officer
Clerk of the Board of Supervisors

By _Lurma C. Walton_
DEPUTY

SYN# 42    OF APR 30 1991                83    1011

LASD000451

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to
be executed by their duly authorized officers as of the date set
forth above.

THE COUNTY OF LOS ANGELES
SHERIFF'S DEPARTMENT

_____
SHERMAN BLOCK
SHERIFF

APPROVED AS TO FORM:

DEWITT W. CLINTON
CHIEF DEPUTY COUNTY COUNSEL

HACIENDA LA PUENTE UNIFIED SCHOOL
DISTRICT

BY _____
COUNSEL FOR THE DISTRICT

_____
DR. JAMES E. JOHNSON
SUPERINTENDENT

BY _____
DEPUTY COUNTY COUNSEL FOR
THE SHERIFF

- 10 -

SYN# 42    OF APR 3 0 1991

84   1012

LASD000452

Exhibit C

BEFORE THE
OFFICE OF ADMINISTRATIVE HEARINGS
STATE OF CALIFORNIA

In the Matter of:

MICHAEL GARCIA, Student,

v.

LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT; LEROY BACA,
SHERIFF; LOS ANGELES COUNTY
OFFICE OF EDUCATION; SOUTHWEST
SPECIAL EDUCATION LOCAL PLAN
AREA; HACIENDA LA PUENTE
UNIFIED SCHOOL DISTRICT; PUENTE
HILLS SPECIAL EDUCATION LOCAL
PLAN AREA; COUNTY OF LOS
ANGELES; AND CALIFORNIA
DEPARTMENT OF EDUCATION.

OAH CASE NO. 2009010064

**ORDER GRANTING AND DENYING
MOTIONS TO DISMISS OR
RESTORE PARTIES AND ORDER
DISMISSING COMPLAINT**


On December 23, 2008, Carly Munson, attorney for Alexander Menzies (Student) filed a request for due process hearing.

On January 7, 2009, the California Department of Education (CDE) moved to be dismissed as a party.

On January 9, 2009, the Hacienda La Puente Unified School District (Hacienda) moved to be dismissed as a party. On January 13, 2009, Hacienda moved for an order restoring the Los Angeles County Sheriff's Department (Sheriff's Department) as a party (see below).

On January 13, 2009, the Puente Hills Special Education Local Plan Area (Puente Hills) moved to be dismissed as a party.

On January 15, 2009, Student moved for an order restoring Sheriff Leroy Baca, the Sheriff's Department, and Jack O'Connell as parties (see below).

On January 27, 2009, the Southwest Special Education Local Plan Area (Southwest) moved to be dismissed as a party.

85

On January 27, 2009, the Los Angeles County Office of Education (LACOE) moved to be dismissed as a party.

On January 30, 2009, Student moved to strike the motions to be dismissed as parties made by LACOE and Southwest on January 27, 2009, and for sanctions.

All motions are opposed, have been fully briefed, and are addressed here.

## BACKGROUND

On December 23, 2008, attorney Carly Munson of the Disability Rights Legal Center filed with the Office of Administrative Hearings (OAH) a request for due process hearing (complaint) on behalf of Michael Garcia (Student) and a purported class of students similarly situated. The complaint alleges that there is no system for delivering special education to disabled students in the Los Angeles County Jail (Jail), and that several parties have acknowledged that fact. According to the complaint, Student, like the other members of the purported class, is between 18 and 22 years of age, has not yet received a high school diploma, has received special education and related services in the past, and continues to require and be eligible for special education and related services. However, Student alleges, he is confined prior to trial in the Jail and, like the others in his purported class, is receiving no special education or related services, and is thereby being denied a free appropriate public education (FAPE).

Student's complaint prays broadly for systemic relief, from all the parties named in the caption, to ensure the delivery of special education and related services to all eligible students in the Jail. He states in one pleading that "an entire special education system must be created before [Student] will be able to receive adequate relief." The complaint also seeks relief from Leroy Baca, the Sheriff of Los Angeles County, from the Sheriff's Department, and from Jack O'Connell, the Superintendent of Public Instruction, but OAH administratively removed those three parties from the caption of the matter on the ground that they were not proper parties to a special education due process hearing under Education Code section 56501, subdivision (a). In addition, OAH declined to file the complaint as a class action, since it has no authority to consider such actions, and filed it as a complaint by an individual instead.

On December 23, 2008, attorney Munson also filed a nearly identical complaint, on behalf of another named student and the same purported class, seeking identical relief. On that same day both students moved to consolidate their cases. OAH opened the cases of the two named students separately (see, OAH Case No. 2009010064) and administratively removed the Sheriff, the Sheriff's Department, and the Superintendent as parties from the other matter as well. On January 8, 2009, the motion to consolidate the two matters was denied.

On January 2, 2009, the Los Angeles County Office of Education (LACOE) and the Southwest Special Education Local Plan Area (Southwest) filed a Notice of Insufficiency

86

(NOI) of Student's complaint, and a motion to dismiss that complaint. The Hacienda La Puente Unified School District (Hacienda) and the Puente Hills Special Education Local Plan Area (Puente Hills) also filed NOIs. On January 8, 2009, OAH issued a Determination of Sufficiency of Due Process Complaint in which OAH ruled that Issues 1A and 1B of Student's complaint sufficiently alleged specific violations of Student's own rights under the Individuals With Disabilities in Education Act (IDEA). However, OAH ruled insufficient all other issues alleged in the complaint, either on the ground that they alleged injuries to the purported class, or alleged claims under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, or the state and federal constitutions, which are outside the jurisdiction of OAH. Student was given leave to amend his complaint, but declined to do so. Thus, the only allegations that remain to be heard in this matter relate to the alleged denial of a FAPE to Student himself.

### APPLICABLE LAW AND DISCUSSION

*Students between 18 and 22 years of age*

Among the individuals with exceptional needs entitled to special education and related services in California is a disabled student who is between the ages of 18 and 22 years, inclusive. Eligibility continues beyond age 18 for a student who is receiving or eligible for special education before his 18th birthday; and who has not completed his prescribed course of study, met proficiency standards, or graduated from high school with a regular high school diploma. (Ed. Code, § 56026, subds. (c)(3), (4).)[1]

There is no doubt that Congress and the Legislature intended, in the IDEA and related statutes, that eligible students continue to receive special education and related services while incarcerated in either a juvenile or adult correctional facility. (20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. §§ 300.2(b)(1)(iv); 300.324(d)(2006); Ed. Code, § 56000, subd. (a.).) The only exception is for a student 18 to 22 years of age who, in his educational placement prior to incarceration, was not identified as being a child with a disability or did not have an individualized education program (IEP). (20 U.S.C. § 1412(a)(1)(B)(ii); Ed. Code, § 56040, subd. (b).) Student alleges that he was receiving special education and related services under an individualized education program (IEP) dated August 24, 2007, and supplemented by an addendum IEP dated May 5, 2008, until his incarceration in the Jail on June 19, 2008. Assuming those allegations are true, that exception does not apply here.

Under IDEA, each state determines the state agency responsible for providing special education and related services to an eligible student who is incarcerated in an adult facility. (20 U.S.C. §1412 (a)(11)(C).) The Legislature has fixed responsibility on special education local plan areas (SELPAs) and county boards of education for providing a FAPE to special education students confined in juvenile court schools and licensed children's institutions, such as foster homes. (§§ 48645.2; 48850, subds. (b)-(c); 56156.4, subds.(a)-(c).) However, no party cites, and research does not reveal, any statute or regulation specifically allocating

---

[1] All citations herein are to the California Education Code unless otherwise noted.

responsibility for the special education of eligible students 18 to 22 years of age who are incarcerated in an adult correctional institution, such as a county jail.  That responsibility must be determined by resort to more general rules.

*Residency and responsibility for providing a FAPE*

The primary responsibility for providing a FAPE to a disabled student rests on a local educational agency (LEA).  (20 U.S.C. § 1414(d)(2)(A); Ed. Code, § 48200.)  As a general rule, a student's school of attendance is determined by the residency of his parent or guardian.  (*Katz v. Los Gatos-Saratoga Joint Union High School Dist.* (2004) 117 Cal.App. 4th 47, 57.)  Section 48200, California's compulsory attendance law, requires that a student between 6 and 18 years of age attend school in "the school district in which the residency of either the parent or legal guardian is located."  That district usually becomes the LEA responsible for providing a FAPE to an eligible student.  (20 U.S.C. § 1401(19); 34 C.F.R. § 300.28(a)(2006); Ed. Code, § 56026.3.)

The Legislature has fixed responsibility for the provision of a FAPE to eligible students between 18 and 22 years of age in section 56041, which provides in relevant part:

Except for those pupils meeting residency requirements for school attendance specified in subdivision (a) of Section 48204, and notwithstanding any other provision of law, if it is determined by the individualized education program team that special education services are required beyond the pupil's 18th birthday, the district of residence responsible for providing special education and related services to pupils between the ages of 18 to 22 years, inclusive, shall be assigned, as follows:

(a) For nonconserved pupils, the last district of residence in effect prior to the pupil's attaining the age of majority shall become and remain as the responsible local educational agency, as long as and until the parent or parents relocate to a new district of residence. At that time, the new district of residence shall become the responsible local educational agency.

Student argues that section 56041 does not apply to him because he is within the exception set forth in section 48204, subdivision (a)(3), which provides, in pertinent part:

(a) Notwithstanding Section 48200, a pupil complies with the residency requirements for school attendance in a school district, if he or she is any of the following:
....
(3) A pupil whose residence is located within the boundaries of that school district and whose parent or legal guardian is relieved of responsibility, control, and authority through emancipation.

Student argues that he was emancipated when he became 18 years of age, and so he is unaffected by the general rule of section 56041.

It is sometimes said that a person is emancipated when he reaches the age of majority. (See, e.g., 10 Witkin, Summary of Cal. Law (10th ed. 2005) Parent and Child, § 298, p. 397.) However, emancipation also has another meaning. A person under the age of 18 years can become an emancipated minor by marriage, by being on active duty in the armed forces, or by receiving a declaration of emancipation. (Fam. Code, § 7002.) A declaration of emancipation is obtained by filing a petition in the Superior Court. (Fam. Code, §§ 7120-7122.)

Student's interpretation of section 48204, subdivision (a)(3) overlooks its purpose, which is to make an alteration to the residency rule of section 48200's compulsory attendance law. The prefatory language of subdivision (a), that "a pupil complies with the residency requirements for school attendance in a school district" if he is within one of the exceptions, suggests that the subject matter of the subdivision is compulsory attendance. There is no need in that subdivision for a rule determining the residency of a student no longer subject to compulsory attendance.

More importantly, Student's interpretation effectively repeals section 56041. If subsection 48204, subdivision (a)(3) exempts all students 18 and older from section 56041, the latter section has no one left to affect, since it applies only to students 18 through 21 years of age.  The exception would abolish the rule.  It is basic to statutory construction that statutes are to be harmonized if possible. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476.) Absurd results are to be avoided. (*Interinsurance Exchange of Auto. Club of Southern Cal. v. Ohio Cas. Ins. Co.* (1962) 58 Cal. 2d 142, 153.) An implied repeal may be found "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " (*Garcia v. McCutcheon, supra,* 16 Cal.4th at p. 477, quoting *In re White* (1969) 1 Cal.3d 207, 212)

If section 48204, subdivision (a)(3) refers to emancipated minors rather than to students who have reached the age of majority, it fits appropriately with the other subsections of section 48204, subdivision (a),[2] in modifying residency rules for the compulsory attendance law, and leaves section 56041 whole and operative.  Moreover, the reference in section 48204, subdivision (a)(3), to a student "whose parent or legal guardian is relieved of responsibility, control, and authority through emancipation" appears to be a reference to the

---

[2] The other exceptions to section 56041 set forth in section 48204(a) are:

(1) A pupil placed within the boundaries of that school district in a regularly established licensed children's institution, or a licensed foster home, or a family home ....
(2) A pupil for whom interdistrict attendance has been approved ... .
(4) A pupil who lives in the home of a caregiving adult that is located within the boundaries of that school district ... .
(5) A pupil residing in a state hospital located within the boundaries of that school district ... .

89

emancipation petition process for minors in Family Code sections 7120 through 7122.  A different section of the Family Code relieves parents of responsibility when a child reaches the age of majority, and it does not refer to that event as emancipation.  (Fam. Code, §7505, subd. (c).)

    Student argues further, without authority, that the Legislature could not have intended to apply section 56041 to a county jail inmate because it would produce the "unworkable," "nonsensical," and "absurd" result that many different districts would be responsible for various inmates' programs.  Student asserts that the Legislature could not have intended that a school district in San Francisco or Sacramento, for example, would have to "enter" a jail hundreds of miles away to deliver special education and related services.

    However, it is not uncommon for a responsible district to administer a distant placement.  As stated by Hacienda's Director of Special Education in an uncontested declaration, "[i]t is possible and a common practice for school districts and non-public schools/agencies to enter into interagency agreements and contract for the provision of special education and related services, even if the schools/agencies are separated by hundreds of miles." (See, e.g., *Shapiro v. Paradise Valley Unified Sch. Dist. No. 69* (9th Cir. 2003) 317 F.3d 1072 [Arizona placement by California district].)  The Education Code contemplates and regulates out-of-state placements.  (§ 56365, subds. (e)-(i).)  A district can discharge its responsibilities by such means as funding and contracting without having to physically enter a distant facility.  The Legislature could well have concluded that the advantages of relying on the district that knows the student best outweigh any administrative difficulties that choice might cause.  If there are such difficulties in applying section 56041 in adult correctional facilities, that is a proper subject for the Legislature.

    Properly construed, section 48204, subdivision (a)(3) refers only to emancipated minors, and does not exempt Student from the general rule of section 56041.  The district responsible for his special education and related services in the Jail is the "last district of residence in effect prior to the pupil's attaining the age of majority ... ." (§ 56041, subd. (a).)  No current party fits that definition, and nothing in this Order is binding on any entity not a party to these proceedings.

*Any decisions regarding a pupil*

    Special education due process hearing procedures extend to the parent or guardian of a pupil, in some circumstances to the pupil, and to "the public agency involved in any decisions regarding a pupil." (§ 56501, subd. (a).)  In a broad sense, many public agencies have made decisions regarding Student.  Student argues, for example, that the Sheriff has made decisions regarding him because he regulates Student's housing, medical care, diet, exercise, and outdoor exposure in the Jail.  However, "decisions regarding a pupil," as used in section 56501, subdivision (a), has a narrower meaning that is focused on decisions about a pupil's special education placement or services.  The subsection goes on to provide that, "[T]he parent or guardian and the public agency involved may initiate the due process hearing procedures prescribed by this chapter under any of the following circumstances:"

90

(1) There is a proposal to initiate or change the identification, assessment, or educational placement of the child or the provision of a free appropriate public education to the child.

(2) There is a refusal to initiate or change the identification, assessment, or educational placement of the child or the provision of a free appropriate public education to the child.

(3) The parent or guardian refuses to consent to an assessment of the child.

(4) There is a disagreement between a parent or guardian and a local educational agency regarding the availability of a program appropriate for the child, including the question of financial responsibility, as specified in Section 300.148 of Title 34 of the Code of Federal Regulations.

That subject matter also describes OAH's jurisdiction in a special education due process hearing. (*Wyner v. Manhattan Beach Unified School Dist.* (9th Cir. 2000) 223 F.3d 1026, 1028-1029.)

The phrase "involved in any decisions regarding a pupil" must be read in the context of its function, which is to describe proper parties to the due process proceeding that the subsection authorizes. The phrase logically refers to the decisions that a parent or agency can litigate in a due process hearing, and that OAH has jurisdiction to review. It would be irrational for the Legislature to authorize making an agency a party to a due process hearing because it made decisions a parent could not address in a due process hearing and an ALJ could not review or alter. The phrase, therefore, does not include system-wide decisions about the provision of special education generally, or agency-wide compliance with law, or the structure of special education programs in particular institutions. Those decisions cannot be reviewed by OAH, and are not "decisions regarding a pupil" within the meaning of section 56501, subdivision (a). That subsection only authorizes joinder of a party who has been involved in the sorts of decisions about educational programming for a particular student that a parent or agency may challenge in a due process hearing, and that OAH has jurisdiction to review and affect.

## DETERMINATION OF MOTIONS

### Hacienda La Puente Unified School District

The only connection between Hacienda and Student is that Hacienda provides adult education in the Jail. Penal Code section 4018.5 provides that a county sheriff may provide for the vocational training and rehabilitation of prisoners in the county jail by entering into an agreement with a school district maintaining secondary schools "for the maintenance, by the district, of adult education classes conducted pursuant to the Education Code." Pursuant to that authority, the Sheriff and Hacienda first entered into a contract in 1973 under which

Hacienda began to provide adult education in the Jail. It has done so ever since. Both the earliest and the current contract are attached to Hacienda's motion to dismiss.

Student argues that by undertaking adult education in the Jail, Hacienda became responsible for all special education required for inmates of the Jail. His claim is not supported by any law, regulation, or decision, or by any term of the contract.

The contract provides that the District shall "establish, supervise, and maintain classes for adult education" in the Jail. The education program to be offered consists of basic elementary school subjects, required high school subjects, and elective subjects leading to elementary or high school graduation, including such subjects as English, reading, writing, arithmetic, and the like. Nothing in the contract mentions special education, and it is clear from the terms of the contract that neither party contemplated the delivery of special education and related services. The contract may be terminated on 30 days' notice by either party, and must be renewed annually.

Elementary principles of contract law forbid Student's interpretation of the contract. The language of a contract, construed according to ordinary and popular usage, governs its interpretation. The intention of the parties is to be ascertained from the writing alone, if possible. The contract extends only to those things concerning which it appears that the parties intended to contract. (Civ. Code, §§ 1638, 1639, 1644, 1648.) The terms of the contract do not create the obligation Student finds in them.

It is clear from the contract that the parties intended that Hacienda furnish only adult and vocational education. The original 1973 contract was subject to the approval of the Bureau of Adult and Continuing Education of CDE. Adult education is regulated by sections of the Education Code that are separate from those regulating elementary and secondary education, and separate from those regulating special education. (See, e.g., §§ 8530-8534, 46140.5; *Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750.) Adult education is mentioned in IDEA and related statutes only as one of the destinations, along with college and employment, that must be considered in drafting a transition plan. (34 C.F.R. § 300.43(a)(1)(2006); Ed. Code, §§ 56043, subd. (g), 56345.1, subd. (a)(1).) IDEA and related laws define responsible state and local educational agencies, *inter alia*, as agencies having administrative control and direction over a public elementary school or secondary school. (20 U.S.C. §§ 1401(5), (19), (32); 34 C.F.R. §§ 300.28(a), (b)(2), 300.41 (2006); Cal. Code Regs., tit. 5, § 3000, subd. (t).) In its capacity as a contract provider of adult education in the Jail, Hacienda does not assert control or direction over a public elementary or secondary school.

Student's interpretation of the contract would only be defensible if some statute, regulation, or doctrine provided that, notwithstanding the express terms of the contract, a district that contracts to provide adult education in a facility containing some adults eligible for special education must take responsibility for that special education. No such authority exists, and it would not be necessary here, since section 56041 places responsibility for an eligible inmate's special education elsewhere.

92

Student's enrollment in the adult education program operated by Hacienda in the Jail is voluntary, as he is no longer subject to the compulsory attendance law. Student does not allege that he has enrolled, or attempted to enroll, in that program. The complaint alleges that he has no school of attendance. Even if Student were correct that Hacienda would be obligated to provide him a FAPE as part of that program, his failure to enroll in it would make any obligation of Hacienda irrelevant.

Student's complaint alleges no connection with Hacienda other than through the contract. It does not allege that he resides within Hacienda's boundaries, or that Hacienda has been involved in any decisions regarding him within the meaning of Section 56501, subdivision (a). Hacienda is, therefore, not a proper party to this matter, and is dismissed.

*California Department of Education*

A local educational agency (LEA) is generally responsible for providing a FAPE to students with disabilities residing within its jurisdictional boundaries. (§ 48200.) The responsibility to identify children with disabilities, to assess in all areas of suspected disability, to determine appropriate educational placements and related services through the IEP process, and to provide needed special education and related services is placed on an LEA. (§§ 48200; 56300; 56302; 56340; 56344, subd. (c).) An LEA is "a school district, a county office of education, a charter school participating as a member of a special education local plan area, or a special education local plan area." (§ 56026.3.) CDE is a state educational agency (SEA), not an LEA, because it is "primarily responsible for the State supervision of public elementary schools and secondary schools … ." (20 U.S.C. § 1401(32).)

CDE is a proper party to a due process proceeding when it provides direct special education services, as it does in the state's specialized schools for the deaf or blind. (See, e.g., *Student v. Montebello Unified School Dist., et al.* (Jan. 21, 2009) OAH Case No. 2008090354 (Order Granting Motion to Dismiss); *Student v. Fremont Unified School Dist.,* et al. (2002) SEHO Case No. SN02-02368; *Minarets Joint Union High School Dist. v. Student, et al.* (1997) SEHO Case No. SN1220-97/SN1301-97.) CDE may also be responsible for providing an individual student a FAPE when California law fails to designate any responsible entity. (*Orange County Dep't of Educ. v. A.S.* (C.D.Cal. 2008) 567 F.Supp.2d 1165, 1170.) However, that rule is inapplicable here, because section 56041 identifies a responsible entity.

In its capacity as the SEA responsible for the administration of special education law in California, CDE is not "involved in any decisions regarding a pupil" within the meaning of section 56501, subdivision (a). There is no *respondeat superior* liability in an SEA for every failure of an LEA to comply with IDEA or state law. (*Beard v. Teska* (10th Cir. 1994) 31 F.3d 942, 953-954; *Carnwath v. Grasmick* (D.Md. 2000) 115 F.Supp.2d 577, 582 ["Plaintiffs must show … that the SEA was directly involved and responsible for the denial of FAPE"]; *Student v. Montebello Unified School Dist., supra,* OAH Case No. 2008090354.)

In 2007, the Legislature amended the definition in section 56501, subdivision (a), of a proper party to a special education due process proceeding by removing the word "educational" from the previous phrase "public educational agency," so now the statute authorizes joinder of a "public agency," not just a "public educational agency." (Stats. 2007, ch. 56, § 83.) Student argues that this amendment makes obsolete all previous decisions concerning CDE's liability in a due process proceeding. However, the amendment does not help Student here. A public agency under the IDEA is one that is "responsible for providing education to children with disabilities." (34 C.F.R. § 300.33 (2006).) And a public agency subject to joinder under section 56501, subdivision (a) must be "providing special education or related services to individuals with exceptional needs" and must be involved in decisions regarding the pupil (§§ 56028.5, 56500; 56501, subd. (a).)

Since Student does not allege that CDE is providing special education or related services to individual students or was involved in any decisions regarding him, CDE is not a proper party to this matter, and its motion to dismiss is granted.

*LACOE and the County*

Student joined both LACOE and the County, separately, as parties. LACOE is within the definition of LEA, but the County is not. (§ 56026.3.) Student argues that LACOE is responsible for Student's special education under section 56140, subdivision (a), which requires that a county board of education have a countywide plan that ensures that all individuals with exceptional needs residing within the county have access to appropriate special education programs and related services. However, Student does not allege that LACOE does not have such a plan, and the language of the section cannot be extended to require the direct provision of special education and related services to an individual student.

Student relies on various duties imposed by the Education Code on the superintendent of the county office of education (§ 1240), but none of those duties concerns the provision of a FAPE to an individual student. Student infers from these supervisory duties that LACOE is responsible for overseeing Hacienda's adult education program in the jail, and has failed to do so. His argument fails for the same reasons his argument concerning Hacienda fails: the contract between Hacienda and the Jail does not oblige Hacienda to provide special education.

Student also alleges that the County of Los Angeles has supervisory authority over Hacienda's program in the jail, and that allegation fails for the same reason.

Since Student does not allege that LACOE or the County was involved in any decisions regarding him, those entities are not proper parties to this matter, and their motions to dismiss are granted.

*The Puente Hills and Southwest SELPAs*

A special education local plan area (SELPA) administers local plans pursuant to section 56205 et seq., and administers the allocation of funds to districts and county boards of education. (§§ 56195, 56836 et seq.)  A SELPA's local plan must include: (1) establishment of a system for determining the responsibility of participating agencies for the education of each individual with exceptional needs residing in the geographical area served by the plan; and (2) designation of the county office, a responsible local agency, or any other administrative entity to perform functions such as the receipt and distribution of funds, provision of administrative support, and coordination of the implementation of the plan. (§ 56195.1, subd. (c).)  SELPAs usually do not directly deliver special education and related services to individual students.

Hacienda is part of Puente Hills, and Student argues that Puente Hills is therefore responsible for overseeing Hacienda's contract with the Jail, and has failed to do so. However, as shown above, that contract does not involve special education and creates no obligation to Student.  Moreover, an uncontested declaration by Puente Hills' Director establishes that Puente Hills neither provides any direct special education and related services to individual students, nor has anything to do with the implementation or oversight of the contract.  Student does not allege any other connection to Puente Hills.

Student alleges that Southwest oversees LACOE's compliance with special education laws.  However, as shown above, LACOE is not an agency involved in decisions regarding Student, and is not a proper party.  Thus, Southwest has no apparent duty here.

Since Student does not allege that Puente Hills or Southwest was involved in any decisions regarding him, those entities are not proper parties to this matter, and their motions to dismiss are granted.

*The Sheriff and his Department*

Student alleges that the Sheriff and the Sheriff's Department have responsibility of providing and overseeing inmate education in the Jail.  However, Student's case against the Sheriff and the Department fails for the same reason that his case against Hacienda fails: the adult education provided by contract in the Jail does not include special education.

Student alleges, as he does with all the parties he named, that the Sheriff and the Department are necessary parties if he is to be afforded complete relief.  However, nearly all the relief he seeks involves systemic change and is premised upon success in his class action. The relief OAH can grant is limited to remedies regarding the denial of a FAPE to an individual student. (§ 56505(f), (g), and (i).)

Neither the Sheriff nor his Department is an LEA. (§ 56026.3.)  Neither is a public agency involved in any decisions regarding Student.  Accordingly, Student's motion to

95

restore the Sheriff and the Department as parties, and Hacienda's motion to restore the Department as a party, are denied.

*Motion to strike and for sanctions*

On January 2, 2009, LACOE and Southwest filed a pleading entitled "Notice of Insufficiency, Motion to Dismiss, and Response to Petitioner's Request for Due Process Hearing." On January 27, 2009, LACOE and Southwest moved to be dismissed as parties.

On January 30, 2009, Student moved to strike the motions of LACOE and Southwest to be dismissed as parties, and moved for sanctions, on the ground that the January 27 filings duplicated the motion to dismiss filed January 2, 2009, and were therefore frivolous and designed to harass Student and cause unnecessary delay. However, there are significant differences between the earlier and later pleadings. The earlier motion to dismiss sought dismissal of the whole complaint, and argued primarily that OAH has no jurisdiction over a request for due process hearing filed on behalf of more than one student, or on behalf of unnamed students. The latter motions argued only that LACOE and Southwest were not proper parties because they were not agencies involved in decisions involving Student.

The January 2 and January 27, 2009, motions by LACOE and Southwest were sufficiently different that the later-filed motions were not frivolous or made solely for the purpose of causing unnecessary delay. (Cal. Code Regs., tit. 1, § 1040, subd. (a).) The motions to strike and for sanctions are denied.

*Dismissal of complaint*

This Order dismisses from the matter every named party except Student, leaving no party from whom relief can be obtained. The complaint is therefore dismissed without prejudice to the filing of a complaint naming proper parties.

ORDER

1.     The motion by the California Department of Education to be dismissed as a party is granted.

2.     The motion by the Hacienda La Puente Unified School District to be dismissed as a party is granted.

3.     The motions by the Los Angeles County Office of Education and the County of Los Angeles to be dismissed as parties are granted.

4.     The motion by the Puente Hills SELPA to be dismissed as a party is granted.

5.     The motion by the Southwest SELPA to be dismissed as a party is granted.

**96**

6.      Student's motion to restore the Sheriff and the Department as parties, and Hacienda's motion to restore the Department as a party, are denied.

7.      The complaint is dismissed.


Dated: February 9, 2009


                                        /s/
                          ┌─────────────────────────────────────┐
                          │ CHARLES MARSON                       │
                          │ Administrative Law Judge             │
                          │ Office of Administrative Hearings    │
                          └─────────────────────────────────────┘

97

## DECLARATION OF SERVICE

**Case Name: GARCIA, MICHAEL**                    **OAH No.: 2009010071**

I, <u>Cara Padilla</u>, declare as follows: I am over 18 years of age and am not a party to this action.  I am employed by the Office of Administrative Hearings.  My business address is 2349 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833.  On <u>February 09, 2009</u>, I served a copy of the following document(s) in the action entitled above:

### ORDER GRANTING AND DENYING MOTIONS TO DISMISS OR RESTORE PARTIES AND ORDER DISMISSING COMPLAINT

to each of the person(s) named below at the addresses listed after each name by the following method(s):

Michael Garcia – Student
Los Angeles County Jail
P.O. Box 86164
Terminal Annex
Los Angeles, Ca 90086
Via US Mail

Carly Munson – Attorney for Student
919 Albany Street
Los Angeles, CA 90015
Via US Mail

Raymond Fortner  - Attorney for County
of Los Angeles
500 West Temple Street
Los Angeles, Ca 90012
Via US Mail

Karen E. Gilyard – Attorney for LACOE
& Southwest SELPA
17871 Park Plaza Drive, Ste. 200
Cerritos, CA 90703-8597
Via US Mail

Michael Hersher – Attorney for CDE
1430 N Street
Sacramento, CA 95814
Via US Mail

Anahid Hoonanian – Attorney for Puente Hills
SELPA
301 East Ocean Blvd., Ste. 1750
Long Beach, CA 90802
Via US Mail

Kerrie Taylor – Attorney for Hacienda La
Puente USD
1 Civic Center Drive
Suite 300
San Marcos , CA 92069
Via US Mail

☒ **United States Mail.** I enclosed the document(s) in a sealed envelope or package addressed to the person(s) at the address(es) listed above, and placed the envelope or package for collection and mailing, in accordance with the Office of Administrative Hearings' ordinary business practices, in Sacramento, California.  I am readily familiar with the Office of Administrative Hearings' practice for collecting and processing documents for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope or package with postage fully prepaid [ ☐ by certified

98

I declare under penalty of perjury under the laws of the State of California that the foregoing is
true and correct.  This declaration was executed at Sacramento, California on February 09, 2009.

_____/s/_____
Cara Padilla, Declarant

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Paul L. Abrams.

The case number on all documents filed with the Court should read as follows:

## CV09- 8943 CAS (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
| --- | --- | --- |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Disability Rights Legal Center
Paula D. Pearlman (Cal. State Bar No. 109038)
919 Albany Street
Los Angeles, CA 90015
SEE ATTACHMENT          (213) 736-8366

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

MICHAEL GARCIA on behalf of himself and others similarly situated,

                                                   PLAINTIFF(S)

                          v.

LOS ANGELES COUNTY SHERIFF'S DEPARTMENT,
a public entity SEE ATTACHMENT

                                                   DEFENDANT(S).

CASE NUMBER

CV;U9-894⁷ CAS(PLAx)

**SUMMONS**

TO:    DEFENDANT(S): _____

       A lawsuit has been filed against you.

       Within **2\** days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, **Daniel M. Perry** _____, whose address is **601 S. Figueroa St., 30Fl Los Angeles, California, 90017** _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

                                                   Clerk, U.S. District Court

**- 4 DEC 2009**

Dated: _____          By: _____
                                                          Deputy Clerk

                                                          *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                              **SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Michael Garcia, on behalf of himself and others similarly situated | Los Angeles County Sheriff's Department, a public entity, et al. (see attached sheet)  See attached Addendum |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| See attached Addendum | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes   ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400, related federal and state statutes and the U.S. and Cal. Const.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | ☒ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV-09-8947

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                                   CIVIL COVER SHEET                                   Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No  ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☒ Yes

If yes, list case number(s): Case No. CV-09-1513-VBF-CTx-- see attached Notice of Related Case

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☒ A. Arise from the same or closely related transactions, happenings, or events; or
                            ☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                            ☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                            ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff Michael Garcia-- Los Angeles County<br>Plaintiff Class-- Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Each named Defendant, except the California Department of Education and Jack O'Connell resides in Los Angeles County | The California Department of Education and Jack O'Connell reside in Sacramento, California |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Claims 1-8 arise in Los Angeles County. | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date December 4, 2009

Daniel M. Perry

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com

DISABILITY RIGHTS LEGAL CENTER
   Paula D. Pearlman (Cal. State Bar No. 109038)
   paula.pearlman@lls.edu
   Shawna L. Parks (Cal. State Bar No. 208301)
   shawna.parks@lls.edu
   Carly J. Munson (Cal. State Bar No. 254598)
   carly.munson@lls.edu
   Andrea Oxman (Cal. State Bar No. 252646)
919 Albany Street
Los Angeles, CA 90015
Telephone: (213) 736-8366
Facsimile:  (213) 487-2106

MILBANK TWEED HADLEY & MCCLOY, LLP
   Linda Dakin-Grimm (Cal. State Bar No. 119630)
   ldakin@milbank.com
   Delilah Vinzon (Cal. State Bar No. 222681)
   dvinzon@milbank.com
   Hannah Cannom (Cal. State Bar No. 245635)
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063

*Attorneys for Plaintiff, Michael Garcia*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GARCIA on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; LEROY BACA, in his official capacity as Sheriff of the County of Los Angeles; the COUNTY OF LOS ANGELES; LOS ANGELES COUNTY OFFICE OF EDUCATION; DARLINE P. ROBLES, in her official capacity as Superintendent of Los Angeles County Office of Education; LOS ANGELES UNIFIED SCHOOL DISTRICT; RAMON C. CORTINES in his official capacity as Superintendent of Los Angeles Unified School District; HACIENDA LA PUENTE UNIFIED SCHOOL DISTRICT; BARBARA NAKAOKA, in her official capacity as Superintendent of Hacienda La Puente Unified School District; the CALIFORNIA DEPARTMENT OF EDUCATION, a public entity; and JACK O'CONNELL, in his official capacity as Superintendent of | Case No.: <br><br><br><br><br> **CLASS ACTION** |

PUBLIC INSTRUCTION FOR THE STATE
OF CALIFORNIA